# BROWN

## *v.*

# THE COMMERCIAL FIRE INSURANCE COMPANY.

---

FIRE INSURANCE; WAIVER OF FORFEITURE; PRACTICE; MOTION FOR NEW
TRIAL, STATEMENT OF GROUNDS FOR; ACTIONS; SEALED INSTRU-
MENTS; EQUITABLE LIENS; APPELLATE PRACTICE; BILLS OF EX-
CEPTION, IMPROPER PREPARATION OF.

1. A provision in a fire insurance policy that no action shall be main-
tainable on the policy unless commenced within twelve months
after loss, even if binding, is waived where the company, by its
secretary, immediately after the loss admitted the plaintiff's
right, then received proofs of loss without objection or denial of
liability, and subsequently conducted negotiations with the plain-
tiff leading him to entertain hopes of final payment, which were
not terminated until about sixteen months after the loss, by a
then communicated denial of liability.

2. Where a defendant in moving that a verdict be directed in his favor
at the close of the plaintiff's testimony, assigned several specific
grounds for his motion, and the motion was granted and verdict
and judgment rendered in his favor, and the plaintiff appealed, a
ground urged here by the appellee in support of his judgment
which was not included in his motion below, was considered, al-
though perhaps not involved on the appeal under a strict con-
struction of the rules governing hearings on appeal, because of
the practice prevailing in the trial courts which permits a defend-
ant after his motion to direct a verdict has been overruled, to
introduce his own testimony and ask a submission of all issues
raised thereby under appropriate instructions to the jury.

3. Even if the execution of a chattel deed of trust on property covered
by a policy of insurance containing a forfeiture clause in case
of incumbrance by chattel mortgage, can be availed of by the
company as a forfeiture, such a forfeiture is waived where, after
the loss, the company's secretary, at the request of the trustee

under the chattel trust, indorsed on the policy that the loss, if any, was payable to the trustee, as such, as interest might appear, dating the indorsement as of date before the loss, and by subsequent conduct on the part of the company inducing the trustee to incur some expense and trouble on the faith of that act.

4. An action of assumpsit will not lie upon a sealed obligation for the payment of money or the performance of a duty; *following* Magruder v. Belt, 7 App. D. C. 303.

5. Whether an instrument sued upon is a sealed instrument or not, is a question to be determined by the court upon an inspection.

6. The modern tendency is toward minimizing the old distinctions between sealed and unsealed instruments; and, in determining in case of uncertainty in a given case whether the instrument of a corporation shall be regarded as sealed or unsealed, stress is ordinarily laid upon the form and character of the paper and the purposes of its execution.

7. While the character of an instrument is often determined by the use of a seal in signing it, although the purpose of affixing it has not been indicated by any recital, and a seal, to be given effect, as such, need not necessarily be in juxtaposition with the signature, the mere impression of a seal, at some time and upon some unusual part of the paper, is not to be accepted as necessarily determining its character.

8. A policy of insurance, the subscriptive clause of which is " In witness whereof, this company executed and attested these presents " on a specified date and at a specified place, under which are the signatures of the president and secretary of the company, in connection with which signatures there is no seal or emblem of any kind, is not a sealed instrument, although in one of the top corners of the policy there is an impression of what purports to be the company's corporate seal, directly over and upon a design in the shape of a scroll — not a part of the contract — on which is entered the amount of the insurance in figures; the inference being a reasonable one that the impression was made, after the policy was signed, by some one acting in a clerical capacity for the purpose of protecting the figures from alteration; and an action of assumpsit is the proper form of action on such an instrument.

9. Where a chattel deed of trust contains a stipulation that the chattels, which are covered by an existing policy of insurance, shall be kept insured for the better security of the debt and a loss thereafter occurs and the policy is thereupon delivered to the trustee under the deed of trust, he has an equitable lien upon the proceeds of the insurance.

·D. C.]                          Syllabus.

10. Where a debtor whose existing and after-acquired stock in trade is insured to the amount of $3,500 in one company and $2,000 in another, gives a chattel deed of trust covering the existing stock in trade, to secure a debt of $7,500, and stipulates therein to insure to the amount of the debt but fails to do so, and a total loss, amounting to more than the debt occurring, the debtor delivers the $3,500 policy to the trustee under the deed of trust, whereupon at the request of the trustee the company issuing it indorses on it that the loss, if any, is payable as interest may appear, to him, as trustee, dating the indorsement as of a date before the loss, the effect of the delivery of the policy to the trustee and the indorsement of the company thereon with full knowledge of the surrounding circumstances, is to constitute the trustee, not a mere appointee to receive payment, but the assignee of the policy with right of action thereon in his own name, as trustee.

11. The words of such an indorsement, "as interest may appear," do not refer to the interest in the property, but to the amount of the deed of trust debt.

12. Under such circumstances, a judgment in favor of .the trustee will protect the company, which has no concern with the possible claims of creditors or subsequent deed of trust creditors, who might, under certain conditions, impress a trust upon the proportion of the insurance applying to the after-acquired stock, in the hands of the trustee.

13. A bill of exceptions appearing to be a literal copy of the stenographer's report of the trial, with the insertion, verbatim, of instruments read in evidence, including a policy of insurance, the material parts of which might have been set forth in a few short paragraphs, held to violate Rule V of this court, regulating the preparation of bills of exceptions and transcripts, and a successful appellant denied the recovery of costs, each party being taxed with the costs incurred by him in this court.

14. This court will, hereafter (March 4, 1903) decline to consider bills of exceptions which do not conform substantially to its rules, where the same have been settled after the notice given in District of Columbia v. Frazer, ante, p. 154 (decided January 20, 1903).

No. 1230.   Submitted January 23, 1903.   Decided March 4, 1903.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury directed by the court, in an action of assumpsit on a policy of fire insurance.      Reversed.

The COURT in the opinion stated the case as follows:

This is an action of assumpsit on a fire insurance policy begun May 2, 1895, by Chapin Brown, trustee in a trust deed that had been given by the insured to secure a debt.

The defendant, the Commercial Fire Insurance Company of the District of Columbia, issued the policy to Philip Walker, on September 16, 1893, covering $3,000 on a stock of shoes and $500 on store furniture and fixtures, for one year. On November 4, 1893, the said Walker, with the approval of the company, regularly assigned the policy to Parker & Walker, a copartnership succeeding him. November 25, 1893, Parker & Walker being indebted to the National Shoe and Leather Exchange in the sum of $7,500, executed a note therefor payable on demand, and on the same day executed and delivered to Chapin Brown, trustee, a conveyance of " all goods, chattels, implements, and other personal property " contained in No. 434 Ninth st., * * * belonging to the said George T. Parker and Philip Walker * * * including a stock of boots, shoes, rubbers, and shoe store supplies, and all the store fixtures in said premises belonging to the said parties and appertaining to the business of the said parties." It contained a stipulation that Parker & Walker shall keep the stock insured for not less than $7,500 and assign the same to the trustee to more effectually secure the debt.

On December 26, 1893, a fire occurred in said premises, destroying said stock and fixtures in part and injuring the remainder. No consent of the insurer had been obtained to the execution of the trust deed. Some time within two days after the fire, Parker & Walker delivered the policy to Brown, the trustee. On December 28, 1893, Brown, in company with one of the beneficiaries of the trust, called at the defendant's office and explained the conditions to its assistant secretary. He did not question the defendant's liability and said he wanted to pay the parties entitled to the money; and further said to Brown: " We have no objection to paying it to you if you are the trustee under the deed of trust."

Brown asked for an indorsement on the policy to that effect, and explained that if done it would amount to a waiver of the defendant's rights. After the matter had been discussed, the secretary said: "Well, now, to prevent any question about this being a waiver of this, hadn't we better date this indorsement prior to the fire?" Brown acceded and the secretary wrote and signed the following indorsement on the face of the policy: "Dec. 23, 1893. Loss, if any, payable as interest may appear, to Chapin Brown, trustee." Subsequently there were negotiations looking to an adjustment of the loss, and Brown, on January 31, 1894, made out sworn proofs of loss which were delivered to the defendant and received without objection. There was another policy covering the same property by the Firemen's Fund Insurance Co. for $2,000, which was mentioned in the proofs of loss. After some correspondence relating to the adjustment the matter was turned over by the defendant to an attorney, who was also one of its directors. Occasional interviews were had with him and finally, on or about April 24, 1895, he notified Brown that at a meeting of the board of directors on April 17, 1895, it had been determined not to settle the loss. Suit was commenced shortly thereafter. Plaintiff's testimony tended to show a total valuation of stock before the fire at $8,751.56, and of fixtures at $1,176.75, making a grand total of $9,927.81. Deducting for goods remaining $507.18, the total loss was $9,420.66.

The goods on hand at the date of the trust deed were estimated at a value of $4,523.76, and those subsequently purchased at $3,000.

The policy was read in evidence and is of the standard form, containing a forfeiture clause in case of incumbrance by chattel mortgage, a provision for payment after sixty days' notice, etc., and another to the effect that no action shall be maintainable until after full compliance with all requirements, " nor unless commenced within twelve months next after the fire."

The policy concludes as follows: " In witness whereof, this company executed and attested these presents this 16th

day of September, 1893, in the city of Washington, District of Columbia." This was signed at the bottom by W. S. Hoge, president, on the right, and on the left by J. W. Schaefer, secretary. There is no seal in connection with these signatures, nor is there an emblem of any kind.

In the corner of the policy at the top of the same, on the right, there is an impression of what purports to be the defendant's corporate seal, directly over a design in the shape of a scroll — not a part of the contract — on which is entered the amount of the insurance in figures, namely, $3,500.

The pleas set up the following defenses: 1. The bar of the limitation clause. 2. Forfeiture by assignment of policy before loss. 3. Forfeiture by reason of the chattel mortgage. 4. Denial of contract and of authority for the indorsement to Chapin Brown, on December 28, 1893.

The replication set up the conduct of the defendant as a waiver of the limitation clause, and also of the forfeiture by the chattel mortgage.

The statement of the case is from the plaintiff's evidence; the defendant offered none. When the plaintiff rested, it moved the court to instruct the jury to return a verdict for defendant on the following grounds:

" 1. The action is in assumpsit while the policy sued on is under seal.

" 2. The plaintiff is not a party to the contract.

" 3. The plaintiff is merely an appointee.

" 4. The only interest the plaintiff has is a partial interest, and others must be joined as their interest appears.

" 5. The limitation in the policy bars the suit."

The motion was granted by the court, apparently upon the ground that the instrument was under seal, and judgment followed the verdict so returned, from which the plaintiff has appealed.

*Mr. John P. Earnest* for the appellant.

*Mr. Leon Tobriner* for the appellee:

1. There is a complete variance between the averments of the declaration and the facts as testified to by the plaintiff, and a total failure of proof to support the declaration. The rule is elementary that if a contract materially different from that alleged is proved the variance will be fatal. *Dennis* v. *Spencer,* 45 Minn. 250.

2. The policy was void because of the execution of the chattel deed of trust.

It was seriously contended in the court below by plaintiff, that a chattel deed of trust is not a " chattel mortgage." We consider that question as settled by the decision of this court in *Dumas* v. *Insurance Co.,* 12 App. D. C. 245, 247, 255, *et seq.* And in *Hunt* v. *Insurance Co.,* 20 App. D. C. 48, where it was held that the execution of a chattel deed of trust, similar in its provisions to that in the case at bar, avoided a policy which provided that it should be void if the property insured " be, or become, incumbered by a chattel mortgage."

This provision was not waived by the memorandum, " Loss if any, payable as interest may appear, to Chapin Brown trustee ? " For definitions of the words " loss " and " damage," see *Fay* v. *Parker,* 53 N. H. 342. The terms " loss " and " damage " are synonymous. 13 Encyc. of Law (1st ed.), 1052, note 1; 19 Encyc. of Law (2d ed.), 549, and notes.

3. Appellant is neither the assured or an assignee, and cannot maintain this action in his own name, because at the most he is only an appointee. *Williamson* v. *Insurance Co.,* 86 Wis. 393; *Grosvenor* v. *Insurance Co.,* 17 N. Y. 391; *Thatcher* v. *Insurance Co.,* 3 McCrary, 387; *Insurance Co.* v. *Davenport,* 37 Mich. 609; *Insurance Co.* v. *Felrath,* 77 Ala. 194, decided in 1884; *Martin* v. *Franklin Ins. Co.,* 38 N. J. L. 140; *Friemansdorf* v. *Insurance Co.,* 1 Fed. Rep. 68, decided in 1879; *Warbassie* v. *Insurance Co.,* 42 N. J. L. 203; *Powers* v. *Insurance Co.,* 69 Vt. 494, 496; Ostrander on Fire Insurance, p. 805, Sec. 390. There are cases which hold that a mortgagee to whom a policy is payable may maintain an action thereon in his own name, but upon examination it will be seen that the loss in such cases is payable absolutely without limitation, to the mortgagee; or the policy

was obtained and paid for by the mortgagee for the purpose
of protecting his mortgage interest; or the action is allowed
under provisions of a code permitting " the real party in
interest " to recover.    There are also a few adjudications
which seem to hold that when the amount recoverable by the
mortgagee equals or exceeds the amount payable as loss he
may maintain the action in his own name.    If these cases
are good law, which we do not concede, yet plaintiff cannot
maintain this suit, because *he cannot recover the whole
amount payable as loss; his deed of trust does not include
the whole stock of merchandise covered by the policy* and
shown to have been damaged.    There was in the premises
at the time of fire and claimed to be damaged, merchandise
of the value of $3,000 which had been placed therein *subse-
quent to the execution of the deed of trust.*    This property
at the time of loss was subject to no lien and the title and all
claims for damage thereto was in, and payable to, Parker &
Walker, and subsequently passed to their assignee.    Did
the appellant take title to goods which were placed in the
store *subsequent to the execution of the chattel trust?*    The
question has generally arisen in litigation between mortgagee
and execution or attachment creditors, and the current of
authorities is that the mortgage must specifically provide
that subsequently-acquired property shall be affected by its
terms.    In some jurisdictions it is held that such mortgage,
even where it does so provide, does not pass the title to after-
acquired property.    3 Encyc. of Law (1st ed.), 187, and
notes; Jones on Chatt. Mort., Secs. 62, 65, 70; *Partridge
v. White,* 59 Me. 564; *Conkling* v. *Shelley,* 28 N. Y. 360;
*Hamilton* v. *Rodgers,* 8 Md. 301, 321.    To the same effect,
*Russell* v. *Wynne,* 37 N. Y. 591, 593; *Winslow* v. *Insurance
Co.,* 4 Metc. 306, 316; *Steinecke* v. *Uetz* (Mo. App.), 1
West. Rep. 413; *Edwards* v. *Symons* (Sup. Ct. Mich.), 8
West. Rep. 784, 787; *Metropolitan Bank* v. *St. Louis Dis-
patch Co.,* 149 U. S. 436, 445.    If plaintiff can maintain
this action, then every person to whom part of the loss is
payable can maintain a separate action in his own name.
But there can be no splitting up of demands.    There can

be but one recovery on a single policy.  *Hartford Ins. Co.*
v. *Davenport,* 37 Mich. 609, 614; *Thatch* v. *Insurance Co.,*
3 McCrary, 387; *Insurance Co.* v. *Felrath,* 77 Ala. 149.
These cases are in line with those requiring suit to be main-
tained by the assured, and not by appointees; any other
holding would subject the insurer to numberless suits upon
one and the same policy.   The policy was not assigned to
plaintiff.   At the best plaintiff took but an equitable inter-
est; this would not justify a suit, in his own name, at law.
*Williamson* v. *Insurance Co.,* 86 Wis. 393, 395, 396; *Frank-
lin Sav. Inst.* v. *Insurance Co.,* 119 Mass. 240; Ostrander on
Fire Ins., p. 504, Sec. 210; 2 Wood on Ins., Sec. 361, p. 759.

4. The policy is under seal.   No action could be main-
tained thereon  before the code of the District of Columbia
went into effect, but in the name of the covenantees.   *Insur-
ance Co.* v. *Imsley,* 7 Pa. St. 223, 231; *Flynn* v. *Life Ins.
Co.,* 115 Mass. 449; *Insurance Co.* v. *McGowan,* 16 Md. 47,
55; *Savings Bank* v. *Insurance Co.,* 29 Conn. 374; 2 Wood
on Ins., Sec. 513, p. 1118.   That the corporate seal of de-
fendant is impressed upon the policy is apparent upon ex-
amination.   *Railway Co.* v. *Hooper,* 160 U. S. 514, 519;
*Duncan* v. *Duncan,* 1 Watts (Pa.) 325.  If the seal appears
on the instrument it is not necessary that it be referred to in
the body of the paper, or attestation clause.   *Bowman* v.
*Robb,* 6 Pa. St. 304; *Connie* v. *Railroad Co.* 3 Houst.
(Del.), 89 Am. Dec. 230, 232, 233; *Mill Dam Co.* v. *Hovey,*
1 Pick. (Mass.) 428; *Taylor* v. *Glaser,* 2 Serg. & Rawle
(Pa.), 504; *Harden* v. *Webster,* 29 Ga. 427, 429; *Porter* v.
*Railroad Co.,* 37 Me. 351.   The position is immaterial if it
appears there is a seal.  *Hackers' Appeal,* 121 Pa. St. 195;
*Lovett* v. *Steam Saw Mill Assoc.,* 6 Paige (N. Y.), 54, 56;
*Phillips* v. *Coffee,* 63 Am. Dec. 362, and note; 4 Thompson
on Corp., Secs. 5072, 5073.

5. The conditions precedent required by the policy to be
performed by the insured were not complied with.   The
rendition of the proof of loss *by the insured,* as provided
in the policy, was a condition precedent to the institution
of suit, and a failure to comply with such provision absolved

the insurance company.  *Riddlesbarger* v. *Hartford Ins. Co.,*
7 Wall. (U. S.), 386–390; *Fire Ins. Co.* v. *Coos County,*
151 U. S. 452–464; *Insurance Co.* v. *Felrath,* 77 Ala. 194;
Ostrander on Fire Ins., Sec. 118, p. 340.

Mr. Justice Shepard delivered the opinion of the Court:

1. The first question arising under the case stated is:
Was the plaintiff's action barred by the special limitation
clause of the policy because not commenced within twelve
months next after the fire?

This is one of the specially assigned grounds of the mo-
tion to direct the verdict for the defendant, but does not
seem, from the brief statement of the opinion of the learned
justice, who presided on the trial, to have been sustained by
him.    From his failure to assign this as one of the grounds
of his action, the inference is that he did not regard it as
well founded.    It has, however, been pressed on the argu-
ment as an additional reason why the judgment should not be
disturbed.

Assuming the binding effect of the limitation clause, we
are of the opinion that it is not enforceable under the con-
ditions and circumstances disclosed by the record.    The evi-
dence on behalf of the plaintiff shows that the defendant,
first, through the action of its secretary, admitted the plain-
tiff's right, and then received proofs of loss without objec-
tion or denial of liability.    Subsequently it conducted ne-
gotiations with the plaintiff leading him to entertain hopes
of final payment, which were not terminated until April 24,
1895, by its then communicated denial of liability.    This
was a waiver of the stipulation.    13 Am. & Eng. Encyc. of
Law (2d ed.), 390.

2. Another ground that has been urged in support of the
judgment, is the forfeiture of the policy through the exe-
cution of the trust deed incumbering the insured property,
without the knowledge or consent of the insurer.    This was
not made a ground of the motion upon which the judgment
was rendered, and under a strict construction of the rule

governing hearings on appeal, might not be considered as now involved. It will, however, be considered, in view of the practice prevailing in the trial courts which permits a defendant after his motion to direct a verdict shall have been overruled, to introduce his own evidence and ask a submission of all issues raised thereby, under appropriate instructions to the jury.

Granting that the execution of the trust deed could have been availed of as a forfeiture, by the terms of the policy, we are of the opinion that the forfeiture has been waived by the recognition given to the policy through the defendant's indorsement thereon, antedated for the express purpose of removing doubt as to its validity, and its subsequent conduct inducing the plaintiff to incur some trouble and expense on the faith of that act. *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410, 418; *Insurance Co.* v. *Norton,* 96 U. S. 234, 241.

3. The next matter of inquiry is, whether the contract of insurance, upon which the plaintiff brought his action in assumpsit, is an instrument under seal. After expressing some doubt, the learned trial justice concluded that it was, and this was the real ground upon which he directed the verdict for the defendant. Upon that view of the nature of the instrument nothing remained but to grant the motion. " There is no principle of the common law better settled than that an action of assumpsit will not lie upon a sealed obligation for the payment of money or the performance of a duty." *Magruder* v. *Belt,* 7 App. D. C. 303, 311.

Now, whether an instrument has been executed under seal or not, is a question to be determined by the court upon an inspection. *Jacksonville, etc., Ry. Co.* v. *Hooper,* 160 U. S. 514, 519. By agreement of the parties, a photo-lithographic copy of the policy has been brought up for that purpose, and what it shows has been described as definitely as possible in the preliminary statement. As a result of inspection, our conclusion is that the policy is not a sealed instrument, and hence that an action of assumpsit can be maintained upon it by the proper party. Whether the present plaintiff is

the proper party is a question that will be considered here-after.

The decided modern tendency, as illustrated by the practices of the business world, by frequent legislation, and by many decisions of the courts, has been towards minimizing the old distinctions between sealed and unsealed instruments. Corporations which formerly were considered incapable of contracting save under seal, now commonly act, in the great mass of their obligations, through the signatures of officers and agents without its addition. In determining, in case of uncertainty, whether the instrument of a corporation, in a given case, shall be regarded as sealed or unsealed, stress is ordinarily laid upon the form and character of the paper and the purposes of its execution.

Hence, the impression of a regular corporate seal in connection with the execution or indorsement of a note, negotiable in form, is not now generally regarded as, of itself, changing its character so as to prevent or arrest negotiability. *Clark* v. *Read,* 12 App. D. C. 343, 350, and cases cited.

And in such cases, where the paper does not recite that it is signed and sealed, the impression of a seal has been considered as a mere mark of genuineness and nothing more. *Jackson* v. *Myers,* 43 Md. 452, 465.

There is nothing whatever in the nature and purposes of contracts of insurance, which it seems are generally executed by corporations without a seal, to suggest setting them apart from the great mass of simple contracts relating to the payment of money. There is no recital or declaration in this policy that it was intended, or expected to be executed under the corporate seal, and the subscriptive clause does not raise the presumption that the signatures of the subscribing officers were to be accompanied thereby. "Attested" — the word used therein — does not mean sealed.

These circumstances are to be regarded as significant. *Metropolitan Life Ins. Co.* v. *Anderson,* 79 Md. 375, 379.

Were it not for the impression of what is said, though not proved to have been, the corporate seal on this policy — which appears in the upper corner of the same, as far re-

moved as possible from the signatures below — there could be no pretense for declaring that it was executed and delivered as a sealed instrument. It is true that the character of an instrument has often been determined by the use of a seal in signing it, notwithstanding that the purpose of affixing it has not been indicated by any recital or declaration therein; and that a seal, to be given effect as such, need not necessarily be in juxtaposition with the signature subscribed thereto. It is equally true, however, that the mere impression of a seal, at some time and upon some unusual part of the paper, is not to be accepted as necessarily determining its character. The impression of the assumed corporate seal on this policy over certain figures not forming a part of the policy, but corresponding in amount with the sum total of the insurance written, may well have been made after the signature, by some one acting in a clerical capacity, for the sole purpose of protecting those figures from alteration. Considering all the circumstances, such an inference seems reasonable.

4. It remains to consider whether the action can be maintained upon the instrument, as a simple contract, by the plaintiff, as trustee, by virtue of the indorsement on the face of the policy signed by the defendant's assistant secretary, as follows: "Dec. 23, 1893. Loss if any payable, as interest may appear, to Chapin Brown, trustee."

The following conditions enter into this consideration: (1) The unpaid debt secured on the property largely exceeds the combined value of the concurrent insurance. (2) The stock, added after the date of the trust deed, was also covered by the insurance. (3) It is assumed that the after-acquired stock was not covered by the terms of the conveyance in trust. (4) Neither Parker and Walker, nor their trustee in a general assignment subsequently executed, set up any claim to the benefit of the insurance, or made proofs of loss. They apparently delivered the policy to Brown for his benefit, and with the intention that he should receive the entire proceeds.

In this connection it is to be borne in mind, also, that

Brown, as trustee, had an equitable lien upon the proceeds of the policy through the express stipulation in the trust deed that the property should be kept insured to the amount of $7,500 for the better security of the loan. *Wheeler* v. *Insurance Co.,* 101 U. S. 439; *Eastern Trust, etc., Co.* v. *American Ice Co.,* 14 App. D. C. 304, 334.

The contention of the appellant is that the legal effect of the delivery of the policy to the plaintiff, and the indorsement of the defendant thereon with full knowledge of all the surrounding circumstances, was to constitute him not a mere appointee to receive payment, but the assignee of the policy with right of action thereon.

Notwithstanding there is some conflict of authority in respect of the right of a mortgagee, to whom a policy issued to the mortgagor has been made payable as his interest may appear, to bring an action thereon in his own name, we concur in the soundness of the appellant's contention.

This is unquestionably the doctrine which prevails in Maryland, from whence our practice has been chiefly derived. *National Fire Ins. Co.* v. *Crane,* 16 Md. 260, 290; *Coates* v. *Pa. Fire Ins. Co.,* 58 Md. 172, 178; *Metropolitan Life Ins. Co.* v. *Anderson,* 79 Md. 375. In the case first cited the policy was issued to Gray — loss, if any, payable to Crane & Co., mortgagees.

Discussing the action of the company in making the policy payable to Crane & Co., it was said: "It was an admission by it that they had an interest in the contract, and were to receive the benefit of it. As observed by the judge below, the policy may be regarded as having been at its inception assigned to them with the assent of the company." In support of its view the court cited a decision of the Supreme Court of Rhode Island, from the opinion in which we have taken the following extract: " In legal effect this was an assignment of the policy, concurred in by the insurance company, to the plaintiff as mortgagee, by virtue of which he alone was entitled to receive the amount of the loss, as additional collateral security for his debt." *Brown* v. *Roger Williams Ins. Co.,* 5 R. I. 394.

Substantially the same rule prevails in Massachusetts. *King* v. *State Mut. Fire Ins. Co.,* 7 Cush. 1, 6; *Fogg* v. *Middlesex Ins. Co.,* 10 Cush. 337, 346; *Palmer Sav. Bank* v. *Insurance Co.,* 166 Mass. 189, 192.

In the case last cited, the decisions of the several States were reviewed by Chief Justice Field, who delivered the opinion of the court, and the result summed up as follows: "It is the practice of the States of this country generally, though not universally, in such a case as the present, to permit the mortgagee to sue in his own name. In some States, it is true, a person for whose benefit a simple contract is made, although not a party to it, is permitted to sue upon it. In some a joint action by the mortgagor and mortgagee is permitted, where the mortgage debt does not exhaust the insurance; in some a distinction is taken between a policy where the loss is payable to a mortgagee without any limitation, and one where the loss is payable to a mortgagee according to his interest; and in some the mortgagor and mortgagee each can sue according to his interest."

After stating the usual practice in Massachusetts respecting insurance for the benefit of mortgagees, which, save as regards a provision of the statute law protecting mortgagees from forfeiture by acts of the mortgagor, is substantially that which prevails elsewhere, he proceeds: "When a mortgagor, under an obligation expressed in the mortgage to insure the property to a certain amount for the benefit of the mortgagee, in satisfaction of this obligation, procures insurance on the property, and makes the loss payable to the mortgagee to the extent of his interest, the mortgagor in fact acts both for himself and for the mortgagee. The mortgagee is not an entire stranger to the consideration, because the mortgagor in effecting the insurance has only performed a duty which he was under toward the mortgagee, and for the performance of which he was paid by the loan which was secured by the mortgage. * * * If the interest assigned equals or exceeds the amount of the insurance, it would be the common case of an assignment, and the promise of the debtor to pay the debt when it becomes payable

to the assignee." It is true, that he also limits the right of recovery by the mortgagee to the extent of his interest, leaving to the mortgagor the right to recover the remainder. In recognizing this right of two actions upon the same policy he overcomes the objection to splitting the debt or action, which is the ground of the decision in *Fire Ins. Co.* v. *Felrath,* 77 Ala. 194, 197 — a case strongly relied on by the appellee here — saying: "While there are objections to splitting a debt without the consent of the debtor, these objections never have prevailed where the debtor has consented to it. An assignment of part of a debt is valid against the debtor if he assents to it, and the assignee can sue for the part assigned in his own name if the debtor has promised to pay it."

This question as to splitting the action is of no importance in this consideration, because, in the case at bar, the secured debt far exceeds the amount of the total insurance. Nor is it of any consequence that the chattel trust may not, under strict construction, have attached to the after-acquired stock. There is no reason why the same old policy, though covering also the additional stock, replacing from time to time that which was daily sold in the course of business, should not remain under the equitable lien created by the express covenant of the mortgagors to keep up insurance to the extent of $7,500, by way of further or better security.

In this connection it is to be borne in mind that the words of the indorsement — "as interest may appear" — do not refer to the interest in the property, but to the amount of the mortgagee's debt.

At any rate, none but creditors or subsequent mortgagees — and apparently there are neither — who might, possibly, under certain conditions, impress a trust upon the proportion of the insurance applying to the after-acquired stock, in the hands of the plaintiff, would be permitted to make the claim. The insurance company is not bound to others, and is protected by the judgment. That plaintiff may be liable to others as possible beneficiaries is of no concern to the defendant. *King* v. *State Mut. Ins. Co.,* 7 Cush. 1, 6; *Brown*

v. *Roger Williams Ins. Co.,* 5 R. I. 394; *Cone* v. *Niagara Fire Ins. Co.,* 60 N. Y. 619, 624.

The right of the mortgagee to maintain the action, where the loss is made payable to him generally, or as his interest may appear, is apparently upheld by the great weight of authority.

In addition to authorities above cited see: *Maxcy* v. *N. H. Ins. Co.,* 54 Minn. 272, 275; *Franklin* v. *Nat. Ins. Co.,* 43 Mo. 491, 496; *Bidwell* v. *St. L. Floating Dock Co.,* 40 Mo. 42, 46; *Motley* v. *Manuf. Ins. Co.,* 29 Me. 337; *State Ins. Co.* v. *Maackens,* 38 N. J. L. 564, 568; *Flanagan* v. *Camden Mut. Ins. Co.,* 25 N. J. L. 506, 518; *Tilley* v. *Conn. Fire Ins. Co.,* 86 Va. 811; *Travelers Ins. Co.* v. *Cal. Ins. Co.,* 1 N. Dak. 151, 153; *Blasinghame* v. *Home Ins. Co.,* 75 Cal. 633, 636; *Colby* v. *Parkersburg Ins. Co.,* 37 W. Va. 789, 794; *Bartlett* v. *Iowa St. Ins. Co.,* 77 Iowa, 86; *Hartford Fire Ins. Co.* v. *Olcott,* 97 Ill. 439, 454; *Donaldson* v. *Insurance Co.,* 95 Tenn. 280; *Burlington Ins. Co.* v. *Lowery,* 61 Ark. 108, 114; *Westchester Fire Ins. Co.* v. *Coverdale,* 48 Kans. 446, 451; *Georgia Home Ins. Co.* v. *Stein,* 72 Miss. 943; *Lowry* v. *Insurance Co. of N. A.,* 75 Miss. 43, 44.

The same doctrine was enounced in an early case in Wisconsin, in which, as in the case at bar, the agent had indorsed on the face of the policy after its issue — " Loss, if any, payable to Keeler, mortgagee." *Keeler* v. *Niagara Fire Ins. Co.,* 16 Wis. 550, 567. There the court said: " There does not seem to have been any necessity for an assignment after the company altered the policy so as to make the loss payable to the mortgagee." In a later case, however, upon which appellee relies, where the entry was — " Loss, if any, first payable to Jennie Perkins or assignees, as her mortgage interest may appear," it was said that the words " operated only a conditional appointment; or order to pay so much of the proceeds of the policy as might be equal to the amount due on the mortgage at the time of and in the event of a loss under it." For what seems to be apt criticism of that case, see *Lowry* v. *Insurance Co. of N. A.,* 75 Miss. 43, 45.

In an early case in New York, also cited on behalf of the appellee, the mortgagee to whom the policy was made payable was declared to be " merely the appointee of the party insured to receive the money which might become due him from the insurers upon the contract. The provision in the policy in this respect had no more effect upon the contract itself than it would if it had been provided that the loss for which the insurers should become liable should be deposited in a specified bank to the credit of the party insured."

The case itself did not involve the particular question as here presented, but it is unnecessary to explain the differences, because the doctrine, as stated, does not obtain in cases like the one at bar, as clearly appears from later decisions of the same court. *Cone* v. *Niagara Fire Ins. Co.,* 60 N. Y. 619, 624, 625; *Hathaway* v. *Orient Ins. Co.,* 134 N. Y. 409, 411, 412. In the case last named the policy had been issued to Breckton, with the indorsement on face: " Loss, if any, payable to J. B. Harbison as his mortgage interest may appear." The point was directly presented, and the court said: " It is said that Harbison is the appointee of Breckton. He is; but he is not a mere appointee of Breckton and without an interest in the policy. He acquired his right to recover damages, not solely by the appointment of Breckton, but by the policy, a contract entered into between the insurer, the owner of the property, and the mortgagee. * * * Breckton, the owner, was not a necessary party plaintiff to an action for the recovery of the amount due from the defendant, for the whole amount was recoverable by an action brought by the mortgagee individually (*Dakin* v. *L. L. & G. Ins. Co.,* 77 N. Y. 600), though a joint action by the owner and the mortgagee could have been maintained. *Winne* v. *Niagara Fire Ins. Co.,* 91 N. Y. 185."

In considering this question we have proceeded throughout upon the assumption that the indorsement was written when dated, namely, three days before the loss occurred.

That it was, in fact, executed two days afterwards does not materially affect the question. If anything, it would seem to strengthen the position of the plaintiff, because, with

full knowledge that the policy had been delivered to him, and that he had an equitable lien on its proceeds by the stipulations of the chattel mortgage, the defendant, recognizing him as the real owner of the indemnity, expressly promised in writing to pay him the entire loss.

For the reasons given the judgment will be reversed and the cause remanded, with direction to set aside the verdict and grant a new trial.

The bill of exceptions in this case is not in conformity with the rules of this court regulating the preparation of bills of exceptions and transcripts.    See Rule V and especially paragraphs 1, f–4–5.

The bill of exceptions appears to be a literal copy of the stenographer's report of the trial, with the insertion, verbatim, of instruments read in evidence.    For example, the policy of insurance is set out in full, when all of it that is material might have been presented in a few short paragraphs.

One result has been a great and unnecessary addition to the costs not only of the transcript of the proceedings below, but of the printed record also.    No objection has been made, by the appellee, on account of these conditions; but without such objection the court will, hereafter, decline to consider bills of exception which do not conform substantially to the rules, where the same shall have been settled after the notice given in the recent case of *District of Columbia* v. *Frazer* [ante, p. 154].

On account, however, of the breach of the rules in this case, recovery of costs will be denied the appellant, and each party will be taxed with the costs incurred by him in this court.    It is so ordered.                              *Reversed.*