**GENERAL PETROLEUM CORPORATION v. SEABOARD TERMINALS COR-PORATION.**

No. 6077.

District Court, D. Maryland.

April 28, 1938.

Hargest, LeViness, Duckett & Mc-Glannan (Edw. E. Hargest Jr., and O. Bowie Duckett, Jr.) of Baltimore, Md., for plaintiff.

Barton, Wilmer, Bramble, Addison & Semans (by F. Fulton Bramble and Wm. R. Semans), of Baltimore, Md., for defendants.

CHESNUT, District Judge.

The controlling question in this case is whether the defendant's contract of guaranty, the cause of action in the case, is to be treated as a sealed or simple contract. If sealed, the plaintiff is entitled to a verdict, but if only a simple contract the suit is barred by limitations. The question was discussed but not decided in a former opinion dealing with the subject matter as it arose on the pleadings only. D.C., 19 F.Supp. 882. The case has now been tried and submitted for final decision on testimony and argument, a jury having been waived by the parties in writing.

The form and contents of the contract of guaranty, and its apparent relation to the main contract which it guaranteed and to which it was physically annexed, were set out in the former opinion and will not be here repeated. It was therein indicated that whether the guaranty constituted a "specialty" under the applicable Maryland Statute of Limitations, Code Pub.Gen.

Laws Md.1924, art. 57, § 3, should be determined by the Maryland Judicial decisions to the extent that they were decisive.[1] The question as to whether extrinsic evidence would be admissible was referred to but was also not then decided.

In addition to the relevant facts appearing in the former opinion, the testimony taken has established the following. The main contract, which was guaranteed by the defendant, was between the plaintiff and the Seaboard Midland Petroleum Corporation which was a wholly owned subsidiary of the defendant, Seaboard Terminals Corporation. The latter was engaged chiefly in the storage of gasoline and similar products and owned a substantial plant and equipment on the Baltimore waterfront. The business of its subsidiary, the Seaboard Midland, was chiefly that of buying and selling gasoline. The particular contract which was guaranteed was for the purchase from the plaintiff, engaged in California in the production and sale of gasoline, of practically the whole supplies of the Seaboard Midland for the year 1927. The particular contract of purchase and sale, and the guaranty attached thereto, was one of a sequence of such contracts apparently all in generally similar form, in force between the plaintiff and the defendant and the Seaboard Midland, for similar supplies for a part of the year 1925, for the year 1926 and for 1927 and similar to one for 1928. The contract for the year 1927, dated September 3, 1926, was the result of negotiations between the parties over a period of four months beginning in May 1926 in California and being concluded September 3, 1926 in New York. These negotiations were conducted principally by the plaintiff's District Sales Manager for New York, Mr. Chester T. Crawford, and the defendant's president, Mr. James H. Foster. The earlier contracts and guaranty it appears had originally been prepared by Cleveland counsel for the Seaboard Companies and approved by California counsel for the plaintiff. The particular contracts dated September 3, 1926, however, were prepared by Mr. Crawford, following the general form and style of the former contracts with appropriate changes as to quantity, price and deliveries as finally agreed upon. He had four copies of the final agreement prepared and sent them to Seaboard Midland by letter dated September 1, 1926, saying: "This contract is our final decision on this matter and the contract as written must be accepted or rejected * * * before 12 o'clock noon September 7, 1926." On September 3, 1926, Mr. Crawford called at the New York office of Mr. Foster and the four copies of the contract, with the guaranty annexed thereto, were signed by Mr. Foster as President and by M. M. Fennell, as Assistant Secretary, they being officers of both Seaboard Companies. And the seals of the respective Seaboard Companies were at the same time impressed upon the contract and the annexed guaranty in the presence of Mr. Crawford. The four copies of the contract and guaranty so executed by the Seaboard Companies were then delivered to Mr. Crawford who forwarded them to California where the purchase contract was signed by officers of the plaintiff and its corporate seal affixed. Thereafter two copies of the contract and guaranty so fully executed were re-delivered to Mr. Foster.[2]

In the performance of the contract

---

[1] In addition to the authorities for this view referred to in the former opinion, see cases reviewed and collected in 109 A.L.R. 482, and Kirsch v. Lubin, 131 Misc. 700, 228 N.Y.S. 94; Coral Gables, Inc., v. Christopher, 108 Vt. 414, 189 A. 147, 109 A.L.R. 474; Alropa Corporation v. Britton, 135 Me. 41, 188 A. 722. See, also, Erie Railroad Co. v. Tompkins, April 25, 1938, 58 S.Ct. 817, 82 L.Ed. ——.

[2] In the former opinion in this case, 19 F.Supp. 882, 883, in referring to typewritten page 15 of the contract and guaranty, which page contained the guaranty, it was said: "And in the margin to the left is also the impression of the corporate seal of the General Petroleum Corpora-

tion." But a more detailed examination of one of the original copies of the contract and guaranty at the trial shows that the impression of the seal of the General Petroleum Corporation on the guaranty was evidently merely the incidental physical result of the intentional impression of its corporate seal on the preceding pages of the contract, the succeeding pages of the whole document evidently having been placed in the jaws of the metallic seal along with the prior pages containing the contract other than the guaranty so that the one physical act of impressing the seal left its impression not only on the pages containing the execution of the contract of sale but on succeeding pages of the document.

gasoline was sold and delivered from time to time by the plaintiff to the Seaboard Midland Company at an aggregate price of nearly $6,000,000; but some considerable time after completion of the deliveries the plaintiff claimed that it had not been fully paid by the purchaser and made demand on it with contemporaneous notice to the defendant guarantor; and thereafter sued the Seaboard Midland Company in the Court of Common Pleas of Baltimore City and obtained a judgment on June 24, 1934 in the amount of $14,244.70, which judgment it has not been able to collect. About the same time it brought suit against the guarantor in one of the Maryland State Courts in Baltimore City, and after obtaining a verdict in the case a motion for a new trial was granted on the ground that the whole evidence both intrinsic and extrinsic, relating to the form of the guaranty, did not show that it was a sealed instrument. Thereafter the plaintiff dismissed that suit on the guaranty without prejudice and has re-instituted the suit in this court. Here its counsel contends that extrinsic evidence relating to the guaranty is fuller and more complete than in the former trial.

The testimony here also showed that the guaranty by the Seaboard Terminals Corporation was made a vital condition by the plaintiff to the making of the contract of sale, the reason therefor being that the Seaboard Midland was considered by the purchaser to be of slight financial substance, while the Seaboard Terminals, the guarantor and the parent company of the Seaboard Midland, was much stronger financially. The former company is not now operating and is said to be out of business. The making of the contract for 1927 was formally expressly authorized by the directors of the defendant corporation and subsequently expressly ratified by them, and it appears that the form of the contracts were submitted and approved but there was no express reference to the seal on the paper. It also appears that the directors of the parent company authorized generally the guaranty of all contracts made by its subsidiary.

■ Defendant's counsel objected to the introduction of practically all of the extrinsic evidence establishing these facts, on the ground that the ultimate question to be determined, whether the corporate seal affixed to the guaranty constituted it

a sealed instrument, must be determined solely from the face of the paper. This position is based chiefly on the supposed authority of the Maryland case of Smith v. Woman's Medical College, 110 Md. 441, 72 A. 1107. But, if it be assumed that what appears on the face of the papers is insufficient to constitute the guaranty a sealed instrument, I am of the opinion that the extrinsic evidence was admissible for the purpose of showing the relationship of the parties to the subject matter and how and when and under what circumstances the corporate seal was affixed to the instrument. And if it be further assumed that this question as to evidence must also be decided in accordance with the Maryland judicial decisions, I do not find that they have announced any rule definitely to the contrary. The case of Smith v. Woman's Medical College, 110 Md. 441, 72 A. 1107, arose on the pleadings only, the question of extrinsic evidence was not involved, and the general language of the court should, I think, be properly limited to the situation with which it was dealing. That extrinsic evidence of intention to use the corporate seal as a general seal and thus create a specialty is admissible in a case such as we are here dealing with is generally recognized. See cases hereinafter cited. And some of the Maryland cases at least imply that extrinsic evidence of intention as to the use of the seal is admissible. See Metropolitan Life Ins. Co. v. Anderson, 79 Md. 375, 379, 29 A. 606; Hamburger v. Miller, 48 Md. 317, 323.

■ As a result of consideration of all the evidence in the case, both the form and appearance of the guaranty itself, its obvious relation to the contract which it guaranteed, and the extrinsic facts showing the situation of and the relationship of the parties to the subject matter, I reach the conclusion that the guaranty sued on must be treated as a sealed instrument. The more important particular factors which impel this conclusion are:

1. The seal is without question the regular recognized, and formal corporate seal of the defendant guarantor;

2. It was affixed to the guaranty in the place where it would naturally and usually be placed for the purpose of sealing the document;

3. It was affixed to the document at the time of its execution by the then author-

140

ized officers acting under the authority of the board of directors who had specifically authorized them to execute "such form of guaranty as may be required for the purpose";

4. It was a paper of vital importance in relation to the contract of purchase which would not have been entered into except on the condition that the guaranty be given. The subject matter represented practically the entire business of the Seaboard Companies for the year 1927 and the contract was of large significance to the plaintiff by reason of the aggregate quantity and price;[3]

5. The guaranty was physically and intentionally an integral part of the whole transaction;

6. There is no question but that the corporate seal of the Seaboard Midland Company impressed at the end of the contract of purchase made the latter a sealed instrument; and the seal of the defendant on the annexed guaranty was placed there at the same time by the same officers and in the same way that the seal of the Seaboard Midland Company had been just previously impressed. Furthermore all this was done in the presence of the representative of the plaintiff without any expression or intimation that the two seals of the two respective Seaboard Companies were used for a different purpose or with a different effect;

7. The only difference between the contract of purchase and the guaranty with respect to the use of the seal lies in the inclusion of the express written reference to the seal in the attestation clause of the contract. If it be suggested that this fact imports a difference in the intention with respect to the effect of the respective seals, the probable explanation is to be found in the comparative lengths of the two papers, the more lenghty one of 14 pages perhaps naturally having the more formal attestation clause;

8. The guaranty was of vital importance to the plaintiff and it seems improbable that its counsel would have approved its execution of the contract except on the understanding that the guaranty as executed by the defendant was equal in

dignity and legal effect to the contract itself. It is certainly very usual for careful counsel to insist on an important contract of guaranty being under seal, for one reason because the seal of itself imports a consideration for the guaranty;

9. While there is no direct and express evidence of intention in the present case with respect to the use of the corporate seal, the extrinsic evidence in connection with the intrinsic appearance of the paper convincingly shows inferentially that the seal was here used as a general seal and made the instrument a specialty.

In summary, I take it that the modern general law with respect to the effect of a seal on contracts, as applicable to this case, should be stated as follows:

1. If the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper. "A recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract." A.L.I. Restatement of the Law of Contracts, § 100. "A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal." A.L.I. Restatement of Contracts, § 98(1). This has recently been held the law in this Circuit. Federal Reserve Bank of Richmond v. Kalin, 4 Cir., 81 F.2d 1003, 1006. The Maryland decisions are the same. Trasher v. Everhart, 3 Gill & J., Md., 234, 246; Smith v. Woman's Medical College, 110 Md. 441, 446, 72 A. 1107.

2. But with respect to a contract executed by a *corporation*, the mere presence of its seal on the paper without any other reference therein to the seal, does not *necessarily* make the contract a specialty, because it is possible the corporate seal was impressed merely as prima facie evidence of corporate authority for the execution of the paper; and in that case extrinsic evidence is admissible to show whether the use of the seal was

---

[3] In Brown v. Commercial Fire Insurance Co., 21 App.D.C. 325, 336, it was said: "In determining, in case of uncertainty, whether the instrument of a corporation, in a given case, shall be regarded as sealed or unsealed, stress is ordinarily laid upon the form and character of the paper and the purposes of its execution."

intended to make the paper a specialty or merely as evidence of its authorized execution, or that it was in fact used without authority. Williston on Contracts, Rev. Ed. 1936, § 271(a); Koehler v. Black River Co., 2 Black 715, 67 U.S. 715, 17 L.Ed. 339; Brown v. Commercial Fire Ins. Co., 21 App.D.C. 325; Coe v. Cayuga Lake R. Co., C.C., 8 F. 534, 537; Central Nat. Bank v. Charlotte Railroad Co., 5 S.C. 156, 158, 22 Am.Rep. 12; Grubbs v. National Life Ins. Co., 94 Va. 589, 592, 27 S.E. 464; Weeks v. Esler, 68 Hun 518, 23 N.Y.S. 54, affirmed 143 N.Y. 374, 38 N.E. 377; Brooklyn Public Library v. New York, 222 App.Div. 422, 433, 226 N.Y.S. 491, affirmed on other grounds 250 N.Y. 495, 166 N.E. 179; Grand Allen Holding Corporation v. M. & S. Circuit, 236 App. Div. 2, 258 N.Y.S. 19; Drexler-Rochester Properties, Inc., v. Paris, 236 App.Div. 409, 259 N.Y.S. 601; Grand Lodge v. State Bank, 79 Fla. 471, 84 So. 528; 6 Fletcher Cyc. Corporations, § 2471; 3 Thompson on Corporations, 3d Ed. § 2045; 36 Michigan Law Review, 836.

3. As I read the Maryland cases, particularly Smith v. Woman's Medical College, 110 Md. 441, 72 A. 1107, 1109, and Conowingo Land Co. v. McGaw, 124 Md. 643, 93 A. 222, 223, they should not be considered as announcing any different rule with respect to the effect of the corporate seal. Smith v. Woman's Medical College is strongly relied on by defendant's counsel in this case as stating a different rule. It is true, as later stated by Chief Judge Boyd in the Conowingo Case, that in the Smith Case and in the earlier Maryland cases: "In determining whether the instruments sued on were specialties, the court emphasized the fact that there was nothing on the face of either of them to indicate that the seal was intended to be affixed;" but in the Smith Case it must be borne in mind that the court was dealing with a question of pleading only, and the court had before it for consideration merely the face of the contract sued on which showed a non-negotiable promissory note of the corporation signed by the president and by the plaintiff (the payee) as secretary with the impression of the corporate seal under the latter's signature. The court said "as no reference is made in the body of the instrument sued on in this case to the corporate seal impressed thereon, and as there is nothing on the face of the paper to indicate that it was intended to be issued as a specialty, we think that unquestionably, under the previous decisions of this court, as well as upon the authority of the text-writers quoted above, the instrument must be considered a simple contract obligation, and not a specialty." In my opinion the effect of the Maryland decisions so far as applicable to the instant case, goes only to the extent of holding that the mere presence of a corporate seal on a paper, without reference to the seal in the paper, is not sufficient of itself to show that the instrument is necessarily a sealed instrument; and I do not think that the cases are to be taken as ruling, contrary to the general law, that extrinsic evidence is inadmissible to show that the seal was impressed with the intention of making the corporation's contract a specialty.

It results the plaintiff is entitled to a verdict here for the amount of the judgment heretofore recovered against the Seaboard Midland Company in the amount of $14,244.70, with interest thereon from June 24, 1934. The clerk is therefore instructed to enter a verdict for the plaintiff in this case in the amount of $17,520.94.

I have considered the separate requests for specific instructions or rulings on the law submitted by counsel for the parties. In view of the foregoing opinion, it is unnecessary to rule on the plaintiff's requests; but I have granted one of the defendant's prayers and rejected the others and have marked them respectively as granted or refused and have filed them with the clerk. Exceptions are noted for the defendant as to adverse rulings.