SIMON KIRSCH, Plaintiff, v. HERBERT LUBIN, Defendant.*

Supreme Court, New York County, November 29, 1927.

Limitation of actions — action on instrument executed in Quebec without seal — instrument is simple contract in this State and six-year Statute of Limitations (Civ. Prac. Act, § 48) applies — twenty-year Statute of Limitations (Civ. Prac. Act, § 47) not applicable — thirty-year Statute of Limitations applies in Quebec — Civil Practice Act, §§ 13, 19, 55, do not make Quebec Statute of Limitations applicable — rule that Quebec Statute of Limitations extinguishes right of action, not applicable — history of Civil Practice Act, §§ 13, 19, 55, discussed.

This is an action brought upon an instrument known in the Province of Quebec as a " deed and hypothec." The instrument, which is the equivalent of a bond and mortgage, was executed by defendant in the Province of Quebec in 1912. At the time of execution both parties were residents of Quebec. Under the

---

* Affd., 223 App. Div. 826. See, also, *Duggan* v. *Lubbin* (131 Misc. 154).

Canadian Statute of Limitations the period within which an action may be brought to enforce said instrument is thirty years.

Defendant was a non-resident at the time the cause of action accrued but is now a resident of New York and has been such for ten years, so that the question of his absence from the jurisdiction during the time the statute was running does not enter as an element, within the intent of section 19 of the Civil Practice Act.

The instrument in question is not an instrument under seal so as to make the twenty-year Statute of Limitations (Civ. Prac. Act, § 47) applicable. The action is governed by the six-year Statute of Limitations (Civ. Prac. Act, § 48).

Sections 13, 19 and 55 of the Civil Practice Act do not, under the circumstances, enable the defendant to avail himself of the thirty-year Statute of Limitations of the Province of Quebec.

The general rule that where the law of limitation of a particular country not only extinguishes the right of action but the claim or title or cause of action itself, *ipso facto*, and declares it a nullity after the lapse of the prescribed period, operates only where the right in the foreign country has actually been extinguished and not where it is still alive, and hence it has no application to the facts in the case at bar.

The enactment, history and effect of sections 13, 19 and 55 of the Civil Practice Act discussed.

MOTION by defendant under rule 107 of the Rules of Civil Practice to dismiss the amended complaint on the ground that it is barred by the Statute of Limitations.

*Otto A. Gillig,* for the plaintiff.

*Harry G. Kosch* [*Nathan Burkan* of counsel], for the defendant.

VALENTE, J.   Plaintiff has brought the action upon an instrument known in the Province of Quebec as a " deed and hypothec." The instrument, which is the equivalent of a bond and mortgage, was executed by defendant in the Province of Quebec in 1912 to plaintiff's assignor, and obligated the defendant to pay the sum of $61,000, together with other consideration, as follows: $18,000 six months, $21,500 twelve months and $21,500 eighteen months after December 19, 1912, with five per cent interest.   No part of this sum has been paid, and on June 17, 1927, the cause of action was assigned to plaintiff.   At the time of execution both parties were residents of Quebec.   The cause of action apparently accrued in 1914.   Under the Canadian Statute of Limitations the period within which an action may be brought to enforce it is thirty years; under section 48 of the Civil Practice Act the period of limitations is six years, unless the instrument is executed under seal, in which event the cause of action remains alive for twenty years.   (Civ. Prac. Act, § 47.)   Defendant was a non-resident at the time the cause accrued, but is now a resident of New York and has been such for ten years, so that the question of his absence from the jurisdiction during the time the statute was running does not enter as an element within the intent of section 19 of the Civil Practice Act.   To

defendant's plea that the complaint be dismissed on the ground that the six-year Statute of Limitations is a bar plaintiff interposes the reply that the instrument sued on is in the nature of a sealed instrument covered by the twenty-year limitation period; and he urges that even if it be deemed otherwise he is protected by the Quebec Statute of Limitations of thirty years, which, he argues, the court must apply under sections 13 and 55 of the Civil Practice Act.

There is hardly any doubt that the instrument in suit is of the highest solemnity, bears the notarial seal and is regarded in the Province of Quebec as a specialty. Whether it is nevertheless a sealed instrument within the purview of section 47 of the Civil Practice Act is another question. Black's Law Dictionary defines a sealed instrument as " an instrument of writing to which the party to be bound has affixed, not only his name, but also his seal, or (in those jurisdictions where it is allowed) a scroll." It does not appear that the party to be bound ever affixed his seal, possibly because the laws of Quebec did not require it. The notarial seal and authentication is not the equivalent of the seal of the party himself. The instrument in question would not be regarded as a sealed instrument under the laws of this State, no matter what its effect may be in a foreign jurisdiction. In *Andrews* v. *Herriot* (4 Cow. 508) the court refused to entertain an action on the covenant on a contract to be performed in Pennsylvania, on the ground that it was not a contract under seal within the laws of New York, although under the laws of the former State it was a sealed instrument, the court ruling that any question relating to the remedy was governable by the *lex fori*. And a similar view is expressed by Mr. Justice STORY in *Bank of the United States* v. *Donnally* (8 Pet. 361). There an action was brought in Virginia on a promissory note made in Kentucky, where such a note had the same force and effect as a sealed instrument. It was contended by the plaintiff that the Statute of Limitations applicable to sealed instruments must be applied to the note in the Virginia courts, although the laws of that State did not recognize it as such. Disposing of this contention the court said: " If, then, it were admitted, that the promissory note now in controversy were a specialty by the laws of Kentucky, still it would not help the case, unless it were also a specialty, and recognized as such, by the laws of Virginia; for the laws of the latter must govern as to the limitation of suits in its own courts, and as to the interpretation of the meaning of the words used in its own statutes."

It thus appears that the twenty-year limitation period is unavailable to plaintiff.

The sole question now remaining to be determined is whether

the longer period of the foreign statute is to govern or the term fixed by the laws of this State. The two controlling sections of the Civil Practice Act, the construction of which is involved, are sections 13 and 55. The solution of the question may be best approached historically.

Prior to the year 1877 a foreign Statute of Limitations was not pleadable here. As was said in *Miller* v. *Brenham* (68 N. Y. 83, 87): " It is well settled in this State that a plea of the Statute of Limitations of the State or country where the contract is made, is no bar to a suit brought in a foreign tribunal, and the *lex fori*, governs all questions arising under that statute." (*Lincoln* v. *Battelle,* 6 Wend. 475, 485; *Ruggles* v. *Keeler,* 3 Johns. 263; *Power* v. *Hathaway,* 43 Barb. 214; *Toulandou* v. *Lachenmeyer,* 37 How. Pr. 145.)

This rule was applied notwithstanding the fact that the action was already barred in the State where the contract was made. Again, even if the cause was still alive in the State where the contract was made, if it was outlawed by the New York statute the action was not maintainable here. Thus an action brought in New York on a witnessed promissory note made in Massachusetts was held barred by the Statute of Limitations of this State, although it would not have been barred by that of Massachusetts. (*Nicolls* v. *Rodgers,* 2 Paine [U. S.], 437; Wood Lim. [4th ed.] § 8.)

The first change of policy in the direction of recognizing foreign Statutes of Limitations came with the passage of section 390 of the Code of Civil Procedure, the predecessor of section 55 of the Civil Practice Act.

It was passed by the Legislature as a part of the Code of Civil Procedure adopted to supersede the old Code of Procedure, and went into effect May 1, 1877. As then adopted it read: " Where a cause of action, which does not involve the title to or possession of real property within the State, accrues against a person who is not then a resident of the State, an action cannot be brought thereon in a court of the State, against him or his personal representative, after the expiration of the time, limited, by the laws of his residence, for bringing a like action, except by a resident of the State, and in one of the following cases: 1. Where the cause of action originally accrued in favor of a resident of the State. 2. Where, before the expiration of the time so limited, the person, in whose favor it originally accrued, was or became a resident of the State; or the cause of action was assigned to, and thereafter continuously owned by, a resident of the State."

The effect of this section was twofold: It enabled a non-resident to avail himself of the limitations plea of his residence in an action brought by a non-resident. (*Smith* v. *Western Pacific R. Co.,* 154

App. Div. 130.) Without the aid of this section such non-resident defendant would have been unable to plead either the foreign or the New York limitation period. The former would have been unavailable, because of the application of the *lex fori* in such pleas, the latter because of section 401 of the Code of Civil Procedure (now section 19 of the Civil Practice Act), as construed in *Olcott* v. *Tioga R. R. Co.* (20 N. Y. 210), by virtue of which the defendant non-resident's absence from the State would toll the statute. But, in addition, the innovation was dictated by the purpose of preventing non-residents from burdening the courts of this State with claims against non-residents, which were already barred by the laws of the State of defendant's residence, but which were maintainable here by reason of a longer period of limitation applying to such claims in this State.

In 1902 section 390-a was enacted (Laws of 1902, chap. 193), which is now incorporated in the Civil Practice Act as section 13. That section provides: " Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws of a state or country where the cause of action arose, for bringing an action upon such cause of action, except where the cause of action originally accrued in favor of a resident of this state."

The significance of this section is thus stated in *National Surety Co.* v. *Ruffin* (242 N. Y. 413, 417): " The obvious purpose of the provision as a whole is to prevent a non-resident claimant from coming into this State and prosecuting a claim whether against resident or non-resident under our Statutes of Limitations if they are more favorable to him than the statutes prevailing in the State where the cause of action arose."

While section 390 of the Code of Civil Procedure applied a limitation rule to actions against non-residents, regardless of where the cause of action arose, section 390-a was intended to cover both resident and non-resident defendants, its applicability being dependent upon the fact that the cause arose without the State. In 1916 section 390 was amended (Laws of 1916, chap. 536) in substantially the form in which we find it in section 55 of the Civil Practice Act. The effect of the amendment and its application to the instant case will be considered later. For the present it may be more conducive to clearness to take up section 13 of the Civil Practice Act, which undoubtedly applies to the case at bar, plaintiff being a non-resident and the cause arising outside of the State, to discover whether it gives sanction to plaintiff's contention that its intent was to make the foreign Statute of Limitations applicable, where it is longer than the domestic statute.

The case of *Isenberg* v. *Rainier* (145 App. Div. 256) definitely overrules such a view. There the court said: " The effect of section 390-a of the Code of Civil Procedure is not to substitute the foreign Statute of Limitations for our own, but to impose it as an additional limitation. Thus an action, whether by a resident or non-resident, *must* be brought within the time limited by our general Statute of Limitations; and, if it arose in a foreign State in favor of a non-resident, it *cannot* be brought after the time limited by the laws of the State in which the cause of action arose. Thus a resident of this State, if not protected by the laws of the State in which the cause of action arose, by reason of his continued absence from that State, may still claim the protection of our own Statute of Limitations."

We may add in line with these views that if the claim against a defendant is not barred by the laws of the State where the action arose, but is thus barred by the statutes of New York, he may avail himself of the protection of our own statute.

In *Plummer* v. *Lowenthal* (165 N. Y. Supp. 220) the Appellate Term had for consideration the defense of the Statute of Limitations to Illinois promissory notes. The parties were both non-residents. Under the Illinois statute the period of limitations of ten years had not yet run, but under the six-year rule of New York the action seemed to be barred. The court refused to apply the Illinois period, holding that " though the cause of action arose outside of the State, and therefore fell within the provisions of section 390-a of the Code of Civil Procedure, yet that section provided only for an additional limitation to that provided by our own general Statute of Limitations." Upon reargument the court adhered to this principle in applying the shorter New York period to a cause arising outside the State in favor of a non-resident, but it reversed its determination that the New York statute had run, holding that in view of section 401 (Civ. Prac. Act, § 19) our statutes did not begin to run until the coming into the State of the non-resident defendant.

In *Dalrymple* v. *Schwartz* (177 App. Div. 650) the court adopted the reasoning of the *Isenberg* case, by which section 390-a was held not to substitute the foreign Statute of Limitations for our own, but to impose it as an additional limitation. As was stated in *Dodge* v. *Holbrook* (107 Misc. 257, 260): " Its only effect (where it is applicable at all) is to shorten the period of limitation."

*Stern* v. *Auerbach* (203 App. Div. 681) also supports defendant's plea that the action is barred by reason of his residence in New York for more than six years, and sustains the interpretation in

the *Isenberg* case that section 390-a (Civ. Prac. Act, § 13) cannot remove the bar of the New York period which has accrued by reason of defendant's six-year residence here unmolested, notwithstanding the fact that the action may still be alive in the State where the cause arose.

An expression in the old case of *Howe* v. *Welch* (14 Daly, 80), while dealing with section 390 of the Code of Civil Procedure, is also illuminating on this branch of the case. There the court, in an action against a non-resident from Iowa, said, by way of dictum: " In other words, if the debt were barred by the Iowa statute, no action upon it could be maintained in a court of this State; but if the debt were not barred in Iowa, the Statute of Limitations of State of New York might nevertheless have been a bar in this action."

The same construction has been applied in jurisdictions of other States. In *Brown* v. *Hathaway* (73 W. Va. 605) it was held that a statute of this character recognizes the foreign period only if it is shorter than that of the forum. In *Fletcher* v. *Spaulding* (9 Minn. 64) the court said, referring to a similar statute: " The effect of it is simply, to allow a citizen of Minnesota to plead the Statute of Limitations of a foreign State or country when it is more favorable than our own, and to allow the same citizen, when he is plaintiff in a foreign cause of action, which he has had from the time it accrued, the benefit of our own statute."

To the same effect see *Hoggett* v. *Emerson* (8 Kans. 262); *Wright* v. *Mordaunt* (77 Miss. 537); *Brown* v. *Case* (80 Fla. 703); *Wing* v. *Wiltsee* (47 Nev. 350). *Smith* v. *Baltimore & Ohio R. R. Co.* (157 Ky. 113) is *contra* in holding that non-residents " bring with them the limitation law of the place where the cause of action accrues." And *Gibson* v. *Womack* (218 Ky. 626) also holds the same. But the interpretation by the courts of that State is exceptional, and it is safe to conclude that by the great weight of authority the rule is that statutes of the type considered are in the nature of additional limitations to those in force in the forum.

But plaintiff contends that the expression in the *Isenberg* case and in the other New York authorities which follow it, that section 390-a is only an additional limitation statute, is mere dictum, overruled by the views of Judge CARDOZO in *Jacobus* v. *Colgate* (217 N. Y. 235, 245). In that case referring to the section in question, he says: " It incorporates into our law the period of limitation of the State where the cause of action arose, *but only when the cause of action did not originally accrue in favor of a resident of this State.*"

The portion which I have italicized seems to undermine plaintiff's argument in that it leads to the inference that Judge CARDOZO

meant the same thing as Judge SCOTT in the *Isenberg* case. If the expression in the *Jacobus* case should be taken as implying that the foreign period is to be substituted for our own, the result would be that a non-resident plaintiff could take advantage of the longer period of the foreign State, while a resident plaintiff would be deprived of that benefit. The obvious meaning of the quotation in the light of the legislative policy to favor our residents is that the period of limitation of the State where the action arose is substituted for our own, but only if it is shorter than ours, except as to resident plaintiffs, who are favored in not being subject to a shortening of the period of limitation. This interpretation is further sustained by the views of Chief Judge HISCOCK in *National Surety Co.* v. *Ruffin (supra)*, already quoted, in which the " obvious purpose " of the section is explained.

It may be objected that Judge CARDOZO did not intend to follow the so-called dictum in the *Isenberg* case by reason of the following comment in the *Jacobus* case relative to section 390-a: " Other restrictions, which we are not required at this time to approve or to condemn, have been placed upon it by judicial construction (*Isenberg* v. *Rainier*, 145 App. Div. 256)."

This neutral attitude, however, must refer to the incorporation into the section under the *Isenberg* decision of the tolling provisions of the foreign State. This view is supported by the learned judge's dissent in *Klotz* v. *Angle* (220 N. Y. 347), wherein he refused to concur in the result as to all causes of action except the *Beer* cause, thus indicating that he dissented from the application of the foreign tolling provisions to section 390-a, as approved by the majority of the court and by the Appellate Division in the *Isenberg* case.

It inevitably follows, therefore, that under section 13 of the Civil Practice Act plaintiff's claim is barred. It now remains to be seen whether anything in section 55 preserves plaintiff's rights and prevents the bar from becoming effective. Up to 1916 that section (then Code of Civil Procedure, § 390), while providing that no action could be brought against a non-resident after the expiration of the time limited by the laws of his residence, excepted therefrom a cause of action in favor of a resident or one who had become a resident before the expiration of the foreign period, or a resident to whom before such expiration the cause of action had been assigned. In 1916 the exceptions in favor of residents were omitted and a proviso substituted that if the foreign limitations be less than the time fixed by the laws of this State for a like action, then the limitation fixed by our laws shall govern. Before discussing the amended statute it may be well to note that while defendant is now a resident he was not

such at the time the action accrued, the phrase " laws of his resi-
dence " meaning the law of his residence at the time the cause of
action accrued and not the time when the action was commenced.
( *Utah Nat. Bank* v. *Jones*, 109 App. Div. 526.)   For purposes of
this section defendant must, therefore, be deemed a non-resident.
The interpretation of the scope of the amended law is not free
from difficulty.   True enough, it eliminated the exception in favor
of resident plaintiffs in actions against non-residents.   But the
proviso, which in effect restores the New York period if longer
than the foreign term in a given case, nullifies the effect of such
elimination and gives back to residents the advantages of the
longer New York period.   In doing so, however, it also gives to
non-resident plaintiffs the same advantages.   The net effect of the
section on the face of it would thus seem to be to restore the old
rule of *lex fori* — except as to actions arising without the State
under section 13 of the Civil Practice Act — to actions against
non-residents, just as it existed prior to 1877, when the original
section went into effect.   The same result might have been attained
by the repeal of the entire section, as the proviso, by restoring
the longer term of the *lex fori* to actions against non-residents —
unless such actions arise outside of the State — has made the
limitation in the first part of the section purposeless, except, per-
haps, in the case of a non-resident against a non-resident upon
a cause of action arising in this State in respect of the right of the
non-resident plaintiff to avail himself of the tolling provisions of
section 19 of the Civil Practice Act.   (See Editorial, N. Y. L. J.
Jan. 7, 1927.)

In this connection, while not strictly necessary to the deter-
mination of the question in issue, it is pertinent to consider why
Chief Judge HISCOCK stressed section 55 of the Civil Practice
Act (Code Civ. Proc. § 390) in deciding the *National Surety
Company* case, and failed to base his decision on section 13 of
the Civil Practice Act, which also might have applied by reason
of the fact that the cause of action arose outside of the State.
The determining element was the fact that the plaintiff was a resi-
dent.   This deprived the non-resident defendant of the benefit of
the protection of that section.   If the protective features of the
statute which might exist as applicable to a non-resident defendant
were to be of any avail, they would have to be sought in section 55.
According to that statute, as applied to the facts in the case, the
six-year New York period of limitation superseded the five-year
Virginia term, and as the New York tolling provisions of section
19 were by that decision read into that section of the law, the
claim was not yet barred and plaintiff prevailed.   There is nothing

in the *National Surety Company* case in the construction of section 55 in conflict with what was said here as to its scope in merely reinstating the *lex fori* in actions in this State against non-residents. The effect of the decision is to make section 55, in actions by residents against non-residents, subject to the provisions of section 19, and thus to prevent the Statute of Limitations from running in favor of non-resident defendants against resident plaintiffs. And what is said by the Court of Appeals in justification of such construction that the Legislature never intended to drive residents of this State into other States for the purpose of preserving and enforcing their claims as against a Statute of Limitations, refers particularly to a situation where, by reason of plaintiff's residence, the non-resident defendant in a cause of action arising outside of the State is barred from the benefits of section 13; where consequently he may seek the benefits of section 55, if they afford him protection, and where, if the plaintiff resident should be barred from resisting defendant's plea by availing himself of the advantages of section 19, he would be compelled to go to the foreign State to preserve his claim against the running of the foreign Statute of Limitations.

But the plaintiff urges another interpretation of section 55 of the Civil Practice Act in view of the apparent very limited scope of that section when literally interpreted. He argues that when the law provided that " an action cannot be brought * * * against him * * * [a non-resident] after the expiration of the time limited by the laws of his residence * * * " it authorizes by implication the bringing of such an action *before* the expiration of the time of the foreign limitation, even if the latter were greater than the time fixed by the laws of this State. Such an interpretation is not a necessary logical inference from the language used, and cannot be made in the absence of clear legislative intent. Besides, it is contrary to legislative policy governing the adoption of statutes which permit the recognition in this State of foreign periods of limitations. The general purpose of the Legislature in such matters was to protect defendants additionally to the protection granted by the domestic statute upon causes of action arising outside of the State, and to some extent to protect non-resident defendants in like manner, regardless of where the cause of action arose. Whether the Legislature succeeded in accomplishing this purpose in connection with section 55 of the Civil Practice Act is aside from the question at this point. But that its purpose was to grant favors to non-resident plaintiffs by substituting the foreign limitation if it was longer than the one existing in this State is contrary to legislative history.

It is true that a situation may arise of a non-resident against whom a claim has accrued, moving to this jurisdiction in order to take advantage of a possible shorter limitation period than prevails in his former home. But there is no evidence of legislative intent to assist non-resident plaintiffs to circumvent such a course by permitting them to defeat a plea in bar based upon the shorter New York term. As a matter of fact, they require no such assistance, because, generally speaking, the statutes of the other State do not run during the absence of the defendants from the original State, and the plaintiffs may not, therefore, be said to be seriously prejudiced. And the construction given to the statutes generally by the courts is not to interpret the statutes which recognize foreign limitations in certain instances as substitution of the foreign laws for our own in such instances, but as *additional limitations* to those existing here.

The comment in *Brown* v. *Hathaway* (*supra*) is also a refutation of plaintiff's view. There the court observed (at p. 607), after stating the language of the West Virginia statute to the effect that "upon a contract which was made and was to be performed in another State or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred by the laws of such State or country:" "May the plain purport of the language and terms of this provision be so enlarged as to impress upon it by construction a meaning and purpose which, if intended, the Legislature could have made clear by plain and unambiguous language? Plaintiffs would have us interpret it to mean that upon a contract made and to be performed in another State, by person who then resided therein, an action may be maintained in this State at any time after the cause of action arose therein and before the expiration of the period of limitation fixed by such State, even though the right of action thereon were barred by the statutes of this State. * * * In our view, such construction does violence to the terms of the statute, and impresses on them a meaning not only not inferable therefrom, but in plain violation of the meaning and purport of the language employed. On the contrary, the clause, properly interpreted, means that if the right to maintain an action on contracts made and to be performed in another State by one who then resided therein is barred by the laws of that State no action thereon may be maintained in this State, though if made and to be performed in this State it may not be so barred. Any other construction is unauthorized and at variance with the decisions of other courts."

However, even if plaintiff's construction of section 55 should be adopted, it would not be availing to him. The defendant for the

purposes of that section is a non-resident, and the cause of action arose outside of the State in favor of a non-resident. From the language of Chief Judge HISCOCK in *National Surety Co.* v. *Ruffin* (*supra,* 417) sections 13 and 55 are independent of each other in their application to a given situation, and a non-resident might choose whichever section gives him the greater protection. It is not for plaintiff to decide which section the defendant should avail himself of. The language in *Whiting* v. *Miller* (183 App. Div. 825, 828) might give rise to the inference that section 55 (390 of the Code of Civil Procedure) is a specific Statute of Limitations in actions against non-residents which supersedes all other statutes, including section 13 (390-a of the Code of Civil Procedure). Even if such were a justifiable inference from the language used in that case, the opinion in the *National Surety Company* case just quoted leads to a different inference, and authorizes the holding that if section 13 gives the non-resident the greater measure of protection he may fall back upon it. It already appears that beyond any doubt defendant has properly availed himself of the protection of section 13. Even if section 55 should be deemed to deprive him of this protection, it nevertheless does not avail the non-resident plaintiff by reason of the bar created by the other section.

The final point urged by plaintiff remains to be considered. It is pointed out that the law of Quebec prescribes a thirty-year period for the enforcement of the instrument in question, not by way of limitation, but by way of extinguishment of the right of action, and, therefore, it is argued that the Statute of Limitation as such has no application. The general rule is that where the law of limitation of a particular country not only extinguishes the right of action, but the claim or title or cause of action itself, *ipso facto*, and declares it a nullity after the lapse of the prescribed period, such law of prescription or limitation may be set up in any other country to which the parties may remove as an absolute bar by way of extinguishment, provided the parties have been resident within the foreign jurisdiction during the whole period of limitation, so that the law has actually operated upon the case as an extinguishment of the claim and not merely as a limitation of the remedy. (Wood Lim. [4th ed.] § 8.)

But this rule operates only where the right in the foreign country has actually been extinguished, not where it is still alive. Hence it has no application to the facts in the case at bar.

It follows, therefore, that the defendant has set up a complete bar to the action, and the motion to dismiss the complaint must be granted.