BERTHA BUILDING CORPORATION,
Plaintiff,

v.

NATIONAL THEATRES CORPORA-
TION, Defendant.

GUMBINER THEATRICAL ENTER-
PRISES, Inc., Plaintiff,

v.

NATIONAL THEATRES CORPORA-
TION, Defendant.

Civ. Nos. 12073, 12074.

United States District Court
E. D. New York.

March 28, 1956.

See also, 15 F.R.D. 339; 16 F.R.D. 320.

Corcoran, Kostelanetz & Gladstone, New York City, Boris Kostelanetz, Theodore E. Gladstone, Francis J. Mulderig, New York City, of counsel, for plaintiff.

Dwight, Royall, Harris, Koegel & Caskey, New York City, Frederick W. R. Pride, Charles F. Young, Stanley Godofsky, New York City, of counsel, for defendant.

GALSTON, District Judge.

Pursuant to an order dated June 25, 1954 of Judge Rayfiel, a separate trial on the issue of the statute of limitations was conducted in two actions brought under the Clayton Act, 15 U.S.C.A. § 12 et seq., against the defendant National Theatres Corporation. The actions were tried together. At the time of trial motions were made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for judgment on the pleadings.

The plaintiffs are California corporations, owning and operating theatres in the City of Los Angeles, California.

The complaints contain substantially identical allegations of conspiracy differing only in order of arrangement of the paragraphs and in the specific details of damage to the particular plaintiff.

It is important to note that in the very first paragraph of the complaint concerning jurisdiction it is alleged:

"* * * the unlawful acts done in pursuance thereof, have been and were conceived, carried out, made effective and performed in part, within this District of the Court and elsewhere in New York and in Los Angeles, California, and throughout all parts of the United States."

Significant allegations are set forth as to the activities of operating subsidiaries of affiliates of the defendant in California. The defendant contends that the compelling inference must be that defendant, within the meaning of the Clayton Act, transacts business and is "found" within the State of California:

"Wherever in this complaint it is alleged that any acts were done by any Theatre Operating Subsidiary of National, plaintiff alleges that all of those acts, were done at the behest and instigation of National and were caused to be done by National pursuant to the unlawful combination and conspiracy of which National was a member, all as will be more completely set forth below.

"Unless otherwise specified, reference to National in this complaint is intended to include National and any theatre operating subsidiary or affiliate thereof as the context requires. * * *"

"National has, at all times mentioned in this complaint and since prior to 1930, controlled certain theatre operating companies which at all times mentioned in this complaint and since prior to 1930 have owned, controlled, leased or operated upwards of five hundred (500) theatres in the states of California, Missouri, Washington, Arizona, Kansas, Illinois, Oregon, Colorado, Utah,

New Mexico, Wyoming, Idaho, Montana, Nebraska, Michigan and Wisconsin."

The plaintiffs define their own terms:

"10. *Conspirators.* The term 'Conspirators' whenever used in this complaint is intended to include, but is not necessarily limited to each and any or all of the following: * * * and in addition to them, the defendant National Theatres Corporation, hereinafter referred to as National and the other defendants herein.

"11. *Theatre Operating Subsidiaries of the Conspirators.* The term, 'Theatre Operating Subsidiaries of the Conspirators' is intended to include and designate those subsidiaries and affiliates of each or any or all of the Conspirators hereinbefore designated which own, control, lease, or operate or have any interest in any motion picture theatre or theatres."

With respect to the conspiracy, each complaint alleges:

"Prior to January 1st, 1930, the defendant National, and the other defendants herein and the Major Distributors and certain producing and distributing corporations affiliated with or controlled by or controlling them, entered into an unlawful combination and conspiracy to restrain and to monopolize interstate trade and commerce in motion picture films throughout and in all parts and places of the United States. The members of this unlawful combination and conspiracy have hereinbefore been identified and designated as the conspirators."

Trade practices were put into effect in California pursuant to the alleged conspiracy, which had as their object discrimination against so-called independent exhibitors, including the plaintiffs, to the advantage of the theatre-operating subsidiaries of the conspirators, including the theatre-operating subsidiaries of the defendant National in Los Angeles.

Various means of effectuating the discrimination against the plaintiffs in Los Angeles are described, such as block booking, blind buying, uniform runs and clearances, fixing minimum admission prices and entering into joint theatre-operating agreements.

Overt acts of the conspirators in effectuating the conspiracy are charged:

"In pursuance of said combination and conspiracy the said Conspirators, including as aforesaid the defendant herein National, and affiliated corporations engaged in the practices and entered into the agreements and committed the acts herein alleged, all of which, unless otherwise stated, have been continuously and periodically done from the time of the formation of said conspiracy to July 20th, 1938, and subsequent thereto."

Certain practices are then described which are alleged to have been put into effect to favor the theatre-operating subsidiaries of National, and to discriminate against independent exhibitors, including plaintiffs in Los Angeles. For example:

"During all times mentioned in this complaint and since prior to 1930, the Conspirators have excluded independent exhibitors, including the plaintiff, from the business of operating first and/or second run theatres and the business of exhibiting pictures on the first and/or second run in the City of Los Angeles and in other cities of the United States with a population of over 100,000."

In Count Two of each complaint, it is alleged that there was a monopoly and conspiracy to monopolize the exhibition of motion pictures by National and its subsidiaries in certain areas, including specifically the State of California and particularly the City of Los Angeles. Means to effect the alleged monopoly are set forth:

"2. National and National's wholly owned subsidiary, Fox West Coast

Theatres, Inc., a California corporation, with principal offices in Los Angeles, California, secured control of approximately Two Hundred and Sixty (260) theatres in the said states of California, Arizona, Nevada and New Mexico, which were organized and grouped into a circuit known as Fox West Coast Theatres, Inc.

\* \* \* \* \*

"4. National coerced, induced or persuaded or forced the operators of theatres in said states, including the plaintiff, to cease operating their theatres either so that National or its Theatre Operating Subsidiaries could acquire such theatres or have removed the competition which such theatres in the hands of independent operators offered."

It is conceded that the Bertha cause of action accrued July 4, 1935, the Gumbiner December 8, 1931. It is from those dates that computations must be made as to the running of the statute of limitations.

Both actions were commenced in 1951, which is prior to the effective date of the four year federal statute of limitations, Section 4B of the Clayton Act, 69 Stat. 283, 15 U.S.C.A. § 15b, and therefore the applicable statute of limitations is determined by reference to the law of the state in which the action is pending. Chattanooga Foundry & Pipe Works v. Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Hoskins Coal & Dry Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, certiorari denied 1952, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704; Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

A federal court in applying the state statute of limitations applies the entire statute, including the statutory borrowing provisions relating to causes of action accruing in foreign jurisdictions. Winkler-Koch Engineering Co. v. Universal Products Co., D.C.S.D.N.Y. 1947, 79 F.Supp. 1013; Hansen Packing Co. v. Swift & Co., D.C.E.D.N.Y.1939, 27 F.Supp. 364; Seaboard Terminals Corporation v. Standard Oil Co., D.C., 24 F. Supp. 1018, affirmed 2 Cir., 1939, 104 F. 2d 659.

The New York statute, Article II of the Civil Practice Act, 2d Ed. Cahill-Parsons 1955, contains a borrowing clause in Section 13:

"Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon such cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply \* \* \*."

Thus, under Section 13, if a cause of action is barred in the state where it arose, it will also be barred in New York against a non-resident, regardless of whether the period of time allowed by the New York statute of limitations has or has not run. Isenberg v. Ranier, 1st Dept.1911, 145 App.Div. 256, 130 N.Y.S. 27; Kirsch v. Lubin, Sp.Ct.N.Y.Co.1927, 131 Misc. 700, 228 N.Y.S. 94, affirmed 1st Dept.1928, 223 App.Div. 826, 228 N.Y.S. 825, affirmed 1928, 248 N.Y. 645, 162 N.E. 559; see Report of New York Law Revision Commission, N.Y.Legis. Doc.1943, No. 65, pages 142, 164.

The applicable California statute of limitations is three years. California Code of Civil Procedure, § 338, subd. 1.

In consequence, the causes of action alleged in the Bertha case were barred as of July 4, 1938, and the Gumbiner Theatrical case as of December 8, 1934, unless the statute was tolled. If it is established that the California statute was not tolled, then nothing more need be considered, since both limiting dates are prior to the institution of United States v. Paramount, D.C.S.D.N.Y., 85 F.Supp. 881. This action the plaintiffs claim tolled all statutes of limitation.

Basically though, the plaintiffs allege that the California Statute of Limitations was tolled by Section 351 of the California Code of Civil Procedure:

"§ 351. Exception, where defendant is out of the State. If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

Accordingly the California courts have construed that section in accordance with its stated purpose: to prevent the running of the statute of limitations against a plaintiff who was unable to present his cause of action in California because the defendant was not amenable to the process of the California courts. See Chappell v. Thompson, D.C.App.2d Dist.1913, 21 Cal.App. 136, 131 P. 82; and Schneider v. Schneider, D.C.App.2d Dist.1947, 82 Cal.App.2d 860, 187 P.2d 459.

Therefore, the question presented is whether the defendant National Theatres was amenable to suit in California under the Anti-Trust Act. This question is in part solved by the Clayton Act, § 12, 15 U.S.C.A. § 22, which reads as follows:

"Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Thus to determine venue it must be decided whether within the meaning of Section 12 of the Act, National Theatres was an inhabitant of California, could have been found there, or transacted business there. The term "transacts business" in Section 22 has a particular meaning which is independent of other definitions of the term in state and federal courts. See United States v. Scophony Corporation, 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.

California authorities support the position taken by the defendant. In Steiner v. Twentieth Century Fox Film Corporation, D.C., 140 F.Supp. 906, it was held that if

"National Theatres engaged in the acts constituting the alleged conspiracy since 1935, all of which are alleged to have occurred in the State of California, then it was certainly doing business in the State of California sufficient to make it responsive to process of the courts of California, and this is true whether it was done directly by National Theatres Corporation or acting through its agents, the other members of the alleged conspiracy. Squarely in point is the Ninth Circuit case of Giusti v. Pyrotechnic Industries, 156 F.2d 351, certiorari denied Triumph Explosives v. Giusti, 329 U.S. 787, 67 S.Ct. 355, 91 L.Ed. 675." [1]

In DeGolia v. Twentieth Century-Fox Film Corporation, D.C., 140 F. Supp. 316, the court reaffirmed the principle enunciated in the Giusti case (cited in the Steiner case supra) that venue is proper as to all conspirators in the district in which the impact of the conspiracy caused the damage to the plaintiff. See also Taylor v. Navigazione Libera Triestina, 9 Cir., 95 F.2d 907.

Authorities in other states have held to the same effect. In Ross-Bart Theatres v. Eagle Lion Films, Inc., D.C.1954, 140 F.Supp. 401, the plaintiff there moved to quash process in an anti-trust action and for dismissal of the action for improper venue. In denying the motion the court said:

"The motion must be denied. Section 12 of the Clayton Act, 15 U.S.C.A. § 22, said the Court in

1. Reversed and remanded on other grounds, 9 Cir., 232 F.2d 190.

United States v. Scophony Corp., 1947, 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091, intended that a 'foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating * * * to its headquarters defeat or delay the retribution due'. This conclusion was also the clear implication of Eastman Kodak Co. v. Southern Photo Materials Co., 1925, 273 U.S. 359, 373, 47 S.Ct. 400, 71 L.Ed. 684. The result is that if the defendant was by itself or through others participating in any business combination or conspiracy in this district in 1948 in such a manner as to violate the antitrust acts, it was suable here in 1953 no matter its then location. Further, for this purpose it could be reached with process running out of this Court wherever it was an inhabitant or was to be found. * * * the Court holds that the sworn charges of the combination and conspiracy in this district, and the commission of acts in the district pursuant thereto directly or by co-conspirators admittedly present here, sustain venue in the eastern district of Virginia."

To the same effect is Don George, Inc., v. Paramount Pictures, D.C.W.D.La., 1951, 111 F.Supp. 458. In that case the court relied on the interpretation given Section 12 of the Clayton Act in Eastman Kodak Co. v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. See also Hansen Packing Co. v. Swift & Co., D.C., 27 F. Supp. 364.

In United States v. National City Lines, 1947, 334 U.S. 573, 68 S.Ct. 116, 92 L.Ed. 1584, the court said, in discussing the changes enlarging the venue provisions under the original Sherman Act and the Clayton Act:

"The basic aim of the advocates of change was to give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries." 334 U.S. at page 583, 68 S.Ct. at page 1175.

So on the basis of the allegations in the complaints, under Section 12 of the Clayton Act, 15 U.S.C.A. § 22, the court sitting in California could have had jurisdiction over the defendant.

In these circumstances the decisions of the California courts compel the conclusion that Section 351 of the California Code of Civil Procedure is not applicable in the cases at bar, and the statute of limitations was therefore not tolled. The actions were therefore barred as of July 4, 1938 in the Bertha case, and as of December 8, 1934 in the Gumbiner case.

Defendant's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is granted and the complaints are dismissed.

Before proceeding to an alternative method of reaching the same result on the facts as adduced at the trial, the objections made by plaintiff to the inconsistent positions that have been taken by defendant in reference to doing business or transacting business in California may be considered. Plaintiffs urge that since defendant has previously taken the position, in other actions, that it was not doing business in California, defendant should now be precluded or estopped from changing its position.

Under the present rules of Federal Practice, inconsistent defenses are specifically permitted, Rule 8(e) (2). If this is allowed in the same action, it is difficult to sustain the position that defendant should not be allowed to plead in separate and distinct actions either one or both defenses.

Moreover the plaintiffs have not shown that in any of the actions in which such inconsistent plea was made it was sustained. In fact, evidence at the trial was to the effect that National, in each instance where the plaintiff did not seek dismissal, appeared and defended the action on the merits. This being so, the

cases cited by plaintiffs are not in point. See Philadelphia, W. & B. R. R. v. Howard, 1851, 13 How. 307, 14 L.Ed. 157; State Compensation Ins. Fund v. Proctor & Schwartz, Inc., D.C.E.D.Pa.1952, 102 F.Supp. 451; Queenan v. Mays, 10 Cir., 1937, 90 F.2d 525, certiorari denied Board of Comr's v. Mays, 302 U.S. 724, 58 S.Ct. 45, 82 L.Ed. 559; Chandler Laboratories v. Smith, D.C.E.D.Pa.1950, 88 F.Supp. 583.

Plaintiffs also rely on a note in 59 H.L.R. 1132 (1946), but at page 1136 the following point is established:

"* * * the courts do not usually preclude a party who has been inconsistent as to the law rather than as to facts. This result is probably reached on the reasoning that, historically, switching one's legal grounds in a suit has never been regarded with the same disfavor as maintaining inconsistent positions as to the facts. Clark—Code Pleading—1928 (p. 434)."

It cannot be too strongly emphasized that the facts are determinative of the issue whether the defendant was doing business or "found" during the times in question. Certainly there is no statutory act which precludes or estops the defendant from maintaining its present position. Nor indeed has the plaintiff been able to show that an equitable estoppel should be charged against the defendant. It may be observed in this connection that there is no showing by the plaintiffs that either plaintiff was prejudiced by the legal defenses which the defendant may have raised in other actions to which the plaintiffs were not parties. I repeat: the facts themselves are determinative of the issue.

The Scophony case, supra, makes it clear that "transacting business" must be interpreted in the light of the nature of the activities of the corporation, and that a list of minor matters incident to doing business is not conclusive. Among such items which the court listed as not being valid criteria were: maintaining an office, warehouse or place of business; owning realty or other physical property; keeping a staff of employees; keeping a telephone or listing, etc.

It was upon the absence of similar incidents of transacting business that plaintiffs here have heavily relied: lack of ownership of real estate, as lessee or tenant; nonpayment of local taxes; not maintaining a staff of employees: location of record books, and not maintaining an office.

However, on the overall consideration of all the facts, including those relating to the nature of National Theatres Corporation as a holding company which took an active part in the affairs of its subsidiaries, it must be concluded that National transacted business in California during the period in question, and no less certainly could thus be "found" in California.

National was parent and grandparent in an intricate multi-corporate structure, and through that structure engaged in the business of exhibiting motion pictures. Approximately two hundred theatres were located in California. Charles P. Skouras and Spyrous Skouras were general managers of National pursuant to contracts dated January 19, 1932 and June 13, 1935, and were present in California transacting business of the corporate structure and of direct interest to National. Charles Skouras actually established his office and resided in Los Angeles. National Theatres guaranteed performance by its subsidiary, National Agency Corporation, of the employment contract of J. J. Sullivan which was to be performed in California. John B. Bertero performed many specific services for National in California. National participated in the bankruptcy proceedings of its largest subsidiary, Fox West Coast Theatres, from February 1933 to February 1935 in the United States District Court for the Southern District of California; and National purchased, in California, the assets of the bankrupt estate at the trustee's sale in Los Angeles.

So as alternative grounds for dismissing the complaint as barred by the California statute of limitations, I find as a

**916**

matter of fact that within the interpretation given Section 12 of the Clayton Act, 15 U.S.C.A. § 22, in United States v. Scophony Corp., 1947, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 and Eastman Kodak Co. v. Southern Photo Materials Company, 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, National Theatres was transacting business in California.

In the light of the foregoing analysis it is not necessary to this decision to pass upon the effect of the institution of the action of the United States v. Paramount on July 20, 1938. By that time the claims of both plaintiffs herein were barred by the statute of limitations in California. By no stretch of the imagination in such circumstances can it be held that the institution of the anti-trust suit filed by the United States against Paramount and other defendants, including National, can revive the dead issue, despite the provisions of 15 U.S.C.A. § 16, which reads:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

Nor is it necessary, therefore, to discuss the New York statute of limitations, and the allegations of the plaintiffs in respect to their contention that the defendant was not doing business in New York during the critical years. It is sufficient for that purpose to refer to the findings which will be filed concurrently with this opinion. They are necessarily multiple because of the voluminous record.

It has been said truly that a statute of limitations is a statute of repose. See Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807, in which it was said:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

Defendant was amenable to suits in both California and New York, and plaintiffs should be precluded from maintaining actions sixteen and twenty years respectively after the alleged causes of action accrued. The complaints are dismissed.

Settle orders.