Thomas D. GEORGE, John C. Winthrop, and Charles F. Fink, Plaintiffs-Appellants,

v.

DOUGLAS AIRCRAFT CO., Inc., Defendant-Appellee.

No. 323, Docket 28476.

United States Court of Appeals Second Circuit.

Argued Feb. 13, 1964.

Decided April 28, 1964.

W. Shelby Coates, Jr., Dow & Stonebridge, New York City, for appellants.

Harold V. McCoy, Reilly & Reilly, New York City (John M. Downing, New York City, of counsel), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

██ Plaintiffs, members of the crew of a DC–7C sold by Douglas Aircraft Co. to Braniff Airways in 1957, were injured when the airplane crashed in Florida in the early morning of March 25, 1958, as the result of an engine failure shortly after taking off from Miami on a flight to South America. They brought this action against Douglas in the Southern District of New York on March 25, 1963, predicating federal jurisdiction on plaintiffs' citizenship in Texas and defendant's Delaware incorporation.[1] The complaint alleged that Douglas had "impliedly and expressly represented and warranted" that the aircraft sold by it to Braniff and the Curtiss-Wright engines installed therein "were of good and merchantable quality, free from defects, and fit for the purposes of commercial carriage for hire for which said aircraft and model engines were intended." Douglas moved for summary judgment "on the ground that the statute of limitations has expired"—more particularly the limitations statute of

---

[1] Although the point has not been raised, we note that the complaint is defective in failing to assert that Douglas' principal place of business is not Texas. 28 U.S.C. § 1332(c) and F.R.Civ.Proc. Form

[2] However, we shall assume that Douglas' principal place of business is in California, and that the complaint could have been amended to allege this.

California, where the airplane was made and delivered, or of Florida, one or the other of which was considered to be made applicable by New York's "borrowing" statute, Civil Practice Act, § 13. Plaintiffs denied that the action was barred under the Florida statute of limitations, which they claimed to be the pertinent one. The judge ruled for Douglas.

Section 48, subd. 3 of the New York Civil Practice Act, in effect when the action was brought, allowed a six year period for "An action to recover damages for a personal injury, except in a case where a different period is expressly prescribed in this article"; § 49, subd. 6 allowed only three years for "An action to recover damages for * * * a personal injury, resulting from negligence." Blessington v. McCrory Stores Corp., 305 N.Y. 140, 111 N.E.2d 421, 37 A.L.R.2d 698 (1953), held the six year statute applicable to an action by the administrator of a child against a store that had sold the mother a dangerously inflammable garment, on the ground that "the contract breached is not merely one to use due care, but is a separate (implied) contract of guaranty that the goods are fit for the purpose for which they are sold and bought." 305 N.Y. at 147, 111 N.E.2d at 423. We shall follow the parties in assuming that the Blessington decision would also have covered an action against a manufacturer not in "privity" with the plaintiffs, although this would have produced what might appear to be the anomalous result that the non-negligent manufacturer within the area of strict liability would be subjected to the six year statute whereas the negligent manufacturer outside that area would have the benefit of the shorter three year statute—a result seemingly inevitable under the New York statutes before their recent revision.[2] Contrast CPLR, §§ 213, subd. 2 and 214, subd. 5. Apart from the borrowing statute the action was thus timely even if Douglas was continuously subject to suit in New York.

New York's borrowing statute as it stood on March 25, 1963, Civil Practice Act, § 13, forbade the bringing of an action by a non-resident to enforce a cause of action "arising" outside New York "after the expiration of the time limited by the laws * * * of the state or country where the cause of action arose, for bringing an action upon the cause of action * * *."[3] If the New York courts would hold that plaintiffs' "cause of action arose" in California, where the contract of sale was executed and the airplane was manufactured and delivered,[4] that would end the matter since § 340(3) of the California Code of Civil Procedure establishes a one-year period of limitations for personal injury actions, and this has been held to apply whether the action sounds in contract or in tort. Rubino v. Utah Canning Co., 123 Cal.App.2d 18, 26, 266 P.2d 163, 168 (Dist.Ct.App.1954).

2. The anomaly may have been only superficial since there may be more reason for a short statute of limitations in an action for negligence where pertinent evidence is likely to be lost than in an action based on strict liability. Also any anomaly was mitigated by the fact that under New York law actions for breach of warranty ruled by the six-year statute accrued on delivery, see Kakargo v. Grange Silo Co., 11 A.D.2d 796, 204 N.Y.S.2d 1010, appeal denied 11 A.D.2d 958, 207 N.Y.S.2d 435 (2d Dept. 1960), whereas actions for negligence under the three-year statute accrued only on injury. If the New York rule as to the accrual of actions for breach of warranty were applicable, the instant action would be untimely under the six-year statute if the airplane was delivered before March 28, 1957. Since the defendant's affidavit alleged only delivery "in 1957," we need not consider whether, as regards its local statute of limitations, New York would here apply its own rule as to the accrual of an action for breach of warranty, or the more liberal rule of California, see Aced v. Hobbs-Sesack Plumbing Co., 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897 (1961), or whatever the rule of Florida may be.

3. This statute has been carried forward as CPLR § 202, but with "accruing" and "accrued" replacing "arising" and "arose."

4. The contract provided that it "shall be construed and performance thereof shall be determined according to the laws of the State of California, U. S. A."

On the other hand the action was brought within the five years which Florida allows for "An action upon any contract, obligation or liability founded upon an instrument of writing not under seal," Fla. Stat. § 95.11(3), F.S.A., but not within Florida's three-year period for "an action upon a contract, obligation or liability not founded upon an instrument of writing * * *," § 95.11(5), or its four-year statute for "Any action for relief not specifically provided for in this chapter." § 95.11(4).[5]

Although the facts in Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963), might well have permitted a decision as to which state's substantive law would govern liability here, they did not produce one. The suit, brought by the administratrix of a passenger killed in New York against the manufacturers of a Lockheed airplane and of a Kollsman altimeter on a theory of warranty, came before the Court of Appeals on pleadings which did not allege the place of manufacture or delivery. The administratrix nevertheless relied on the law of California, which apparently does impose strict liability on an airplane manufacturer. Hinton v. Republic Aviation Corp., 180 F. Supp. 31 (S.D.N.Y.1959); Garon v. Lockheed Aircraft Corp., 7 CCH Av.Cas. 17,418, 1962 U.S.Av.R. 130 (1961). Cf. Peterson v. Lamb Rubber Co., 54 Cal.2d 339, 353 P.2d 575 (1960); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962). The Special Term had dismissed the complaint, Goldberg v. American Airlines, Inc., 23 Misc.2d 215, 199 N.Y.S.2d 134 (Sup.Ct.1960), on the basis of New York law which it held to be applicable on the authority of Poplar v. Bourjois, Inc., 298 N.Y. 62, 80 N.E.2d 334 (1948) and which, on its view, did not impose strict liability. The Appellate Division affirmed. 12 A.D.2d 906, 214 N.Y.S.2d 640 (1961). The majority of the Court of Appeals, taking a different view of New York substantive law on the basis of opinions it had rendered subsequent to the decisions below, notably Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962), said that "it really makes no difference whether New York or California law be applied, since in this respect both States use the same rules." 12 N.Y.2d at 436, 240 N.Y.S.2d at 594, 191 N.E.2d at 82. However, the majority evidently looked to New York law in approving dismissal of the complaint as to Kollsman, the manufacturer of the allegedly defective altimeter, the places of manufacture or delivery of which were not alleged, and the three dissenters did the same in urging that the complaint against Lockheed should be dismissed without suggesting that plaintiff ought be given an opportunity to amend so as to plead manufacture and delivery in California.

■ Combining these radiations from the Goldberg opinions with the Poplar decision and Chief Judge Desmond's statement in Goldberg that "strict tort liability" would be "a more accurate phrase" to describe the liability being imposed, 12 N.Y.2d at 437, 240 N.Y.S.2d at 595, 191 N.E.2d at 83, we think New York would look to the law of the place of injury, here Florida, rather than to the law of the place of manufacture or of delivery to determine whether liability existed. This prediction is buttressed by what our own view would be apart from these helpful intimations. The interest protected by the imposition of strict liability on a manufacturer is, as Dean Pound pointed out, the interest in maintaining "the general security." Introduction to the Philosophy of Law 87 (1953 ed.). An accident caused by a defective product threatens the "general security" of the state where the injury occurs rather than of the state of delivery, which is often determined by tax or other considerations wholly extraneous

5. We shall follow the parties in assuming, although the papers do not make this clear, that Douglas was suable in Florida ever since the date of the accident. Otherwise, under Fla.Stat. § 95.07, F.S.A., the running of the statute of limitations would have been tolled.

to the instant problem, or even of the state of manufacture. In the typical cases of strict products liability—the trichinous pork, the inflammable garment, the exploding bottle, the defective steering gear, or the noxious cosmetic—the victim will generally be resident in the state where injured. While this will less frequently be true of airplane crashes, that state is likely to incur the burden of hospitalization and care of residents and non-residents alike. Moreover, one could hardly support application of a different choice of law rule for airplanes than for automobiles, and it would seem quite irrational that the victim's recovery on a theory of strict liability should depend upon whether or not the state where the plane was manufactured had chosen so to provide with respect to accidents as to which it had primary concern. Extra-state manufacturers are not entitled to have their goods enter a state on easier terms as to liability than the state establishes generally; they are as able as the intra-state manufacturer to provide for their own protection by insurance or self-insurance. Even more clearly if a state has decided in general that persons injured within its borders by a particular kind of defective chattel should not be allowed to recover against the manufacturer except for negligence, there would be little reason to accord a greater degree of protection because the chattel causing the injury was made in another state which has shown a broader concern for the general welfare of its citizens by imposing strict liability.

■ Although we travel thus far down the road with appellants, we cannot accept their conclusion that this necessarily means that New York would consider their cause of action to be one "arising" in Florida for the purpose of making Florida's limitation period the controlling one under § 13. As a matter of the ordinary meaning of language it seems equally possible to say that the cause of action "arose" in California where defendant's allegedly wrongful act was done or in Florida where plaintiffs were injured by it—and this even though Florida be regarded as furnishing the normative rule. In predicting which choice the New York Court of Appeals would make, we must give weight to the purpose of the borrowing statute. It has been said that such additions to the statute of limitations "were necessitated by the rule [e. g., New York Civil Practice Act, § 19] that the period is interrupted by absence of the defendant from the forum whether the cause of action arose in the forum or in a foreign jurisdiction against a nonresident defendant. In the absence of a borrowing statute, this rule would permit actions which have long since been barred by the *lex. loci* and by the statutes of the state where the defendant resided and which would have been barred by the forum had the defendant resided there since the cause of action arose." Note, Developments in the Law: Statutes of Limitations, 63 Harv.L.Rev. 1177, 1262–63 (1950). See also Ester, Borrowing Statutes of Limitations and Conflict of Laws, 15 U.Florida L.Rev. 33, 40–44 (1962).

New York's response to this need has had a long and tortuous history. The initial effort was § 390 of the Code of Remedial Justice (later designated as the Code of Civil Procedure), Laws, 1876, c. 448. This provided, with exceptions not here material, that an action could not be brought in New York against a non-resident "after the expiration of the time, limited, by the laws of his residence, for bringing a like action. * * *" In 1902 the Legislature supplemented this with § 390a, Laws, c. 193, which ultimately became § 13 of the Civil Practice Act. Since non-residents were already quite well taken care of by § 390, the initial purpose of § 390a must have been to protect residents from suits in New York that would have been barred in a state having a closer connection with the claim, as well as to give additional protection to non-residents as to claims "arising" in a state which was neither New York nor that of their residence, including the case, presumably a rare one, where the statute of the state of their residence had been tolled but the statute of the third

state had not been. For reasons no longer understood, see Kirsch v. Lubin, 131 Misc. 700, 228 N.Y.S. 94 (1927), aff'd, 223 App.Div. 826, 228 N.Y.S. 825 (1928), aff'd, 248 N.Y. 645, 162 N.E. 559 (1928); New York Law Revision Commission, Report, pp. 178–83 (1943), the Legislature later added a proviso to § 390 "that if the limitation of the time fixed by the laws of his [the non-resident's] residence for bringing such action be less than the time fixed by the laws of this state for a like action, the limitation fixed by the laws of this state shall apply." Laws 1916, c. 536; in this form § 390 became § 55 of the Civil Practice Act. Since the addition of the 1916 proviso largely frustrated the original purpose, the 1943 Legislature, acting on the cited report of the Law Revision Commission, repealed old § 55 and enacted an essentially meaningless one reading as follows:

> "§ 55. Action against nonresident; same limitation as against resident. Except as provided in section thirteen of this act an action upon any cause of action may be brought in a court of this state within the time limited therefor by the laws of this state, and may not be brought thereafter, and the time limited for bringing a like action by the laws of the place of residence of the person against whom the cause of action arose or by the laws of the place where the cause of action arose, shall not apply." Laws 1943, c. 516.

The new CPLR omits this useless provision.

▆▆▆▆ However difficult it may be to follow these meanderings, New York's policy for nearly a century has been to protect a non-resident defendant against an action in New York, which was timely because of the tolling provision of § 19 of the Civil Practice Act, but had become barred elsewhere. From 1877 to 1902 this office was performed by § 390 of the Code of Civil Procedure, from 1902 to 1916 by a combination of §§ 390 and 390a, and since 1916 solely by the latter, subsequently § 13 of the Civil Practice Act and now § 202 of the CPLR. This

being the principal evil with which the New York Legislature sought to deal, a court required to choose between two linguistically permissible decisions as to where a cause of action "arose" ought to lean to the reading more likely to achieve the underlying policy against prolonging the period of limitations because of the defendant's absence from a jurisdiction where there was no reason to expect him to be present. The New York courts have shown their awareness of these considerations by interpreting § 13 to include a borrowing statute of a state where the cause of action "arose" barring the prosecution of a claim if an action is barred by the state of the defendant's residence. Holmes v. Hengen, 41 Misc. 521, 85 N.Y.S. 35 (Sup. Ct.1903), aff'd mem. 94 App.Div. 619, 88 N.Y.S. 1104 (1st Dep't, 1904); cf. Ross v. Graham, 122 Misc. 574, 203 N.Y.S. 390 (Sup.Ct.1924). Contrast Hobbs v. Firestone Tire & Rubber Co., 195 F. Supp. 56 (N.D.Ind.1961). In personal injury actions against a manufacturer, the latter's amenability to suit in the place of injury would be fortuitous, at least in the absence of a considerable extension of "long-arm" statutes, compare Young v. Hicks, 250 F.2d 80 (8 Cir. 1957), and the usual tolling statute in that state might indefinitely prolong the limitations period. On the other hand, the manufacturer would always be suable in the state of manufacture and generally in that of delivery, the two latter being identical in the instant case. As indicated above, we perceive no obstacle to predicting that the New York Court of Appeals would consider a cause of action as "arising" for the purposes of the borrowing statute in a state different from the one whose substantive law would determine liability; that Court's recent opinion in Babcock v. Jackson, 12 N.Y. 2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), stated that decision of each choice of law question "must turn * * * on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." Sharing Professor Ehrenzweig's view that

the place-of-accrual test is "ambiguous" if not "entirely unworkable," Conflict of Laws 430 (1962), and despite general statements that a tort action inevitably "arises" where the last act necessary to establish liability occurred, we predict that New York would hold that plaintiffs' cause of action here "arose" in California, whose one year statute would be a bar.[6]

■ Since we cannot be wholly confident as to the accuracy of that prediction, we think it well also to examine the consequences if New York would in fact consider the issue governed by Florida's statutes of limitations. On that view, see fn. 5, plaintiffs acknowledge they could prevail only if their action is "upon any contract, obligation or liability founded upon an instrument of writing not under seal," for which § 95.11(3) permits an action to be brought "within five years"[7] rather than "upon a contract, obligation or liability not founded upon an instrument of writing," which carries a three year period, or in tort, covered by the four year period "for relief not specifically provided for in this chapter," Warner v. Ware, 136 Fla. 466, 182 So. 605 (1938); Manning v. Serrano, 97 So.2d 688 (Fla.1957). An action by Braniff against Douglas under the purchase contract would come within § 95.11 (3) even if Braniff relied on provisions that were implied rather than express. McGill v. Cockrell, 88 Fla. 54, 101 So. 199, 201 (1924). Plaintiffs would proceed from that premise on the basis that the Florida decisions on products liability speak, as do many others, in terms of

"implied warranty." Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313 (1944); Matthews v. Lawnlite Co., 88 So.2d 299 (Fla.1956); Continental Copper & Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc., 104 So.2d 40 (Fla.Dist. Ct.App., 1958); Carter v. Hector Supply Co., 128 So.2d 390 (Fla.1961); Smith v. Platt Motors, Inc., 137 So.2d 239 (Fla. Dist.Ct.App., 1962). But it is simply confusing to consider an obligation which the law imposes irrespective of the intention of the parties or even in direct contravention of their expressions as in the same category as a contractual warranty, express or fairly implied.[8] Douglas specifically confined its warranties to three named in the purchase contract and limited its liability for breach of those three to correcting them if defects occurred within specified periods, disclaiming any liability for consequential damages. The warranties cannot therefore be construed as impliedly extending to the crew, as part of Braniff's "industrial family" or on a third party beneficiary theory, see Harper & James, The Law of Torts 1589–90 (1956), and any liability which the plaintiffs can assert on these pleadings would be in spite of, rather than under, the terms of the contract. The nature of a manufacturer's liability to third parties has been recently stated by the Supreme Court of Florida to be "the undertaking or agreement, attributed by law, to be responsible in the event the thing sold is not in fact merchantable or fit for its ordinary use or purposes." Green v. American Tobacco Co., 154 So.2d 169, 171 (Fla.1963). In the absence of

6. We have not thought it necessary to consider the possibility that New York would bar the action if it was barred either in Florida or in California, on the theory that conduct by the manufacturer and injury to the plaintiffs were both indispensable to the cause of action, so that the latter would "arise" in both states. Compare Pattridge v. Palmer, 201 Minn. 387, 277 N.W. 18 (1937) and Osgood v. Artt, 10 F. 365 (N.D.Ill.1882).

7. If § 95.11(3) were applicable, the action would be timely although the accident occurred early on March 25, 1958,

and the suit was not begun until March 25, 1963. McMillen v. Hamilton, 48 So. 2d 162, 20 A.L.R.2d 1246 (Fla.1950).

8. The insistence on using contract terminology and the lag in recognizing a tort liability to be what it is reminds of Sir Henry Maine's comment that fictions are "the greatest of obstacles to symmetrical classification * * * There is at once a difficulty in knowing whether the rule which is actually operative should be classed in its true or in its apparent place." Ancient Law, 32.

Florida decisions directly on point, we think the New York Court of Appeals would think that the Supreme Court of Florida would think that such a liability would be either "upon a contract, obligation or liability not founded upon an instrument of writing" or, still more reasonably, in tort. See Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1124–34 (1960); ALI, Restatement 2d, Torts § 402A, comment g (Tent.Draft No. 7, 1962); Goldberg v. Kollsman Instrument Corp., supra, 12 N.Y.2d at 436–37, 240 N.Y.S.2d at 595, 191 N.E.2d at 83.[9]

Affirmed.

WATERMAN, Circuit Judge (concurring):

I concur in the result we have reached.

---

9. On this view it is unnecessary for us to consider whether if the New York Court of Appeals would think the cause of action arose in Florida it would not also feel bound to inquire whether Florida would take the same view under its similar borrowing statute. Compare Holmes v. Hengen, supra. If, contrary to our belief, the Court of Appeals would think the Supreme Court of Florida would think the action was "upon any contract, obligation or liability founded upon an instrument of writing," it might also think the Florida Court would think such a cause of action on the contract "arose" in California and would be barred by the Florida borrowing statute.